**GRANADA BIOSCIENCES, INC., Granada Foods Corporation, David Eller and Linda S. Eller, Appellants,**

v.

**William P. BARRETT, Forbes, Inc. and Cheryl Munke, Appellees.**

No. 07–96–0355–CV.

Court of Appeals of Texas, Amarillo.

Sept. 16, 1997.

Ellers' Motion for Rehearing Denied Oct. 21, 1997.

Munke's Motion for Rehearing Granted in Part Oct. 21, 1997.

Michael D. Sydow, Kelli McDonald Sydow, Kay K. Morgan, Joe H. Reynolds, Houston, Carr, Evans, Fouts & Hunt, Charles R. Skip Watson, Jr., Lubbock, for appellants.

George Donaldson & Ford, LLP, David H. Donaldson, Jr., R. James George, Jr., Peter D. Kennedy, Austin, Ogden, Gibson, White & Brooks, LLP, William W. Ogden, Stacy W. Beasley, Houston, Norwich & Schad, Tennyson Schad, New York City, for appellees.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

REAVIS, Justice.

This case involves the showing a defendant must make to obtain a summary judgment in a business disparagement action by two public corporations, and in actions for defamation and intentional infliction of emotional distress brought by two officers of the public corporations. By multiple points of error, appellants Granada BioSciences, Inc. (GBI) and Granada Foods Corporation (GFC), contend that the trial court erred in granting summary judgment in favor of appellees William P. Barrett (Barrett), Forbes, Inc. (Forbes), and Cheryl Munke (Munke), on the corporate claims for business disparagement. Also, appellants David Eller and his wife, Linda Eller, present multiple points of error contending that the trial court erred in granting summary judgment in favor of appellees on their claims for defamation and intentional infliction of emotional distress. Based on the rationale and authorities expressed herein, we affirm the judgment of the trial court in part and reverse in part, remanding a portion of this cause to the trial court for further proceedings.

**Procedural History**

On November 11, 1991, Forbes published an article about Granada Corporation entitled "The incredible shrinking empire" written by Barrett, which is attached hereto as an Appendix. Following publication, GBI and GFC filed separate suits against Barrett, Forbes, and Munke in the 133rd District Court of Harris County, which were later transferred to the 190th District Court, seeking to recover damages for business disparagement. As to Munke, a former employee of a Granada organization, GBI and GFC allege that she provided false information to Barrett. Also, David Eller and Linda Eller commenced their action against Barrett, Forbes, and Munke for libel, slander, negligent and intentional infliction of emotional distress, false light and invasion of privacy, in the 165th District Court of Harris County. Initially, the three separate actions were consolidated in the 190th District Court for discovery purposes only. After the 190th District Court granted the Barrett/Forbes motions for summary judgment as to the claims of GBI and GFC, the actions were consolidated in the 190th District Court for all purposes. On September 11, 1995, notwithstanding Rule 301 of the Texas Rules of Civil Procedure which provides that there shall be only one judgment in a case, the 190th District Court signed an order grant-

ing Munke's motion for summary judgment as to the claims of all appellants, and signed a second judgment granting the Barrett/Forbes motions for summary judgment against all appellants. Because each "order" or "judgment" contains a "Mother Hubbard" clause, they are appealable.[1] Because the multiple claims, summary judgment evidence, and proceedings are not common as to all appellants and appellees, and the points of error are diverse, we are compelled to conduct our review and analysis of relevant points on a party basis. Before commencing the analysis however, because the summary judgment standard of review is common to all of the contentions, we will set out the appropriate standard of review.

## Summary Judgment Standard Of Review And Preservation of Error

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). This requirement dictates that when the defendant is the movant, he must conclusively negate at least one of the essential elements of the plaintiff's cause of action. Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). In *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), the Court set out the standard by which we are to review a summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 64 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 341 (Tex.1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Insurance Co. Of N. Am. v. Security Ins.*, 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

## GBI and GFC v. Barrett, Forbes, and Munke

### Business Disparagement

The summary judgment evidence does not describe the business structure of the various corporations and business entities with absolute certainty. However, for purposes of our disposition, the exact and precise history and organization of the entities is not material. It appears that David Eller and his brother, James Eller, organized Granada Corporation, a private corporation, in 1972. Later, GBI and GFC were organized as public corporations and listed on the American Stock Exchange. David Eller was chairman of the board of directors and Linda Eller was an officer of GBI and GFC. According to the Forbes article, in 1989 the Wall Street Jour-

1. See *Mafrige v. Ross*, 866 S.W.2d 590 (Tex. 1993).

nal described Granada Corporation as a "corporate star of the future."

On September 11, 1995, the trial court signed summary judgment for Barrett and Forbes and a separate summary judgment for Munke. By six points of error, GBI and GFC contend that the summary judgments for Barrett and Forbes should be reversed. By two points of error, GBI and GFC contend that the summary judgment for Munke should be reversed. Because the claims and points of error as to Barrett and Forbes are not common with the claims and points of

error as to Munke, the judgments will be considered separately.

## Barrett and Forbes

Barrett and Forbes filed a joint motion for summary judgment as to the claims of GBI and a separate joint motion for summary judgment as to the claims of GFC. Although similar, the grounds in the two motions are not entirely common. The motions identified the causes of action as libel and sought summary judgment on the grounds that:

### GBI

A. GBI may only complain of statements that are of and concerning GBI, not those that concern Granada Corporation or the Granada organization.

B. GBI may not recover for damages it allegedly suffered because of allegedly false, defamatory statements about its related company GFC or Granada Corporation or its subsidiaries or affiliates.

C. Most of the statements in the *Forbes* article are not defamatory to GBI.

D. The statements of and concerning GBI are substantially true.

E. GBI is a limited purpose public figure.

F. The *Forbes* Defendants believed the factual statements in the article were true.

G. The *Forbes* article contains protected or privileged opinion or fair comment based on stated facts.

H. GBI is not a living person, and therefore cannot recover under Texas' libel statute.

I. Oral statements made during the investigation of the *Forbes* article were privileged.

### GFC

A. GFC may not recover for damages it allegedly suffered because of alleged false, defamatory statements about its sister company, Granada BioSciences or Granada Corporation, or its organization of subsidiaries or affiliates.

B. Any amended libel or slander claims by GFC regarding statements made about it are barred by the one-year statute of limitations in Tex. Civ. Prac. & Rem.Code § 16.002.

C. GFC may only complain of statements that are of and concerning GFC, not those that concern Granada Corporation or other Granada entities.

D. Several of the statements in the *Forbes* article concerning GFC are not defamatory.

E. The statements of and concerning GFC are substantially true.

F. GFC is a limited purpose public figure.

G. The *Forbes* Defendants believed the factual statements in the article were true.

H. The *Forbes* article contains protected and privileged opinion or fair comment based on stated facts.

I. GFC is not a living person, and therefore cannot recover under Texas' libel statute.

J. Oral statements made during the investigation of the *Forbes* article were privileged.

GBI and GFC present six points of error seeking reversal. Point of error one is a general point claiming that the trial court erred in the granting of summary judgment as to the claims of all of the defendants. This point is followed by specific points of

error, which are briefed jointly with point of error one, outlined as follows:

Point 2. The trial court erred in granting summary judgment on a ground not raised in the motion for summary judgment;

Point 3. The trial court erred in striking the GBI and GFC reply brief and proof;

Point 4. The trial court erred in granting summary judgment on the GBI and GFC business disparagement claims because numerous fact issues exist with regard to the elements of malice and falsity;

Point 5. The trial court erred in granting summary judgment because Barrett and Forbes failed in their burden to prove the affirmative defense of privilege; and

Point 11. The trial court erred in refusing to rule upon the written objection and motions to strike the Barrett and Forbes summary judgment proof.

Barrett and Forbes urge that the summary judgment should be affirmed because: (a) GBI and GFC have not challenged the summary judgment that certain statements are not defamatory or disparaging; and (b) each entity cannot recover for statements that are not about it, but relate to other Granada entities.

By points of error one and two, GBI and GFC contend that the trial court erred in granting summary judgment for Barrett and Forbes because the motions for summary judgment did not address their claims for business disparagement. Our review of this contention requires a detailed analysis of the procedural history. The GBI and GFC pleadings at the time the motions for summary judgment were filed in January 1995, alleged among other things, that Barrett and Forbes "made oral and written false and disparaging statements" concerning the corporations which caused financial injury, and that the statements were made with knowledge that they were false, or with reckless disregard concerning falsity, or Barrett and Forbes acted with the intention to interfere with the corporations economic interest, or with ill will. The pleadings however, did not specifically identify the claims as business disparagement, libel or slander, or any other cause of action. In response to such pleadings, Barrett and Forbes filed separate but similar motions for summary judgment against GBI and GFC on the basis that the claims of GBI and GFC were for libel or defamation. The Barrett/Forbes motions, which included substantial briefing and authorities, identified the GBI and GFC claims as libel and addressed the elements of libel

under chapter 73 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1997).

On February 13, 1995, GBI and GFC filed separate, but similar responses in opposition to the Barrett/Forbes motions, which also included considerable briefing and authorities, contending that the motions for summary judgment were "fatally flawed" because they did not address their claims for business disparagement, but sought summary judgment on perceived libel claims. On March 10th, GBI and GFC filed their second amended petitions to assert their business disparagement claims in more detail. Even though the summary judgment motions were set for hearing on March 20th, on March 13th, without amending their motions for summary judgment, Barrett and Forbes filed "replies" to the GBI and GFC responses, without leave of the court. The March 13th "replies," contended, among other things, that because a claim for business disparagement and libel share some elements, that the label of libel used by Barrett and Forbes in their motions for summary judgment was irrelevant and that their motions were effective against the business disparagement claims of GBI and GFC.

On March 17th, without leave of court, GBI and GFC filed "replies" to the Barrett and Forbes "replies" filed on March 13th. At the hearing on March 20th, the transcription shows that Barrett and Forbes withdrew their March 13th "replies" at which time the trial court struck the GBI and GFC "replies" filed on March 17th. The court signed orders granting the Barrett/Forbes motions for summary judgment on March 20th.

On March 30th, while the March 20th orders remained interlocutory, GBI and GFC filed a joint motion to set aside the summary judgment orders contending, among other things, that because the Barrett/Forbes motions did not address the business disparagement claims of GBI and GFC, but addressed only libel and slander, the summary judgments should be set aside. The record is silent as to disposition of the motion to set aside the summary judgments, but it was apparently denied when the September 11, 1995 final summary judgment was signed.

■ The law of libel has been codified in chapter 73 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1997). Section 73.001 enumerates the elements of libel. Other sections of chapter 73 codify certain defenses and address other issues often involved in an action for libel. However, actions for business disparagement have not been codified and are not covered by chapter 73. The elements of a claim for business disparagement are (1) publication of disparaging words by the defendant, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987). Although the two causes of action share similar elements and involve the imposition of liability for injury sustained through publications to third parties, the two torts protect different interests. *Id.*

GBI and GFC contend that the summary judgment must be reversed because the Barrett/Forbes motions did not meet their cases as they were pled. *Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 759 (Tex.1976). However, without citation or reference to any authority, Barrett and Forbes assert that the labeling of their motions for summary judgment to address claims of libel is not controlling, and for these purposes is irrelevant. Essentially, Barrett and Forbes assert that the GBI and GFC contention amounts to an *absurd application of form over substance.* We disagree.

In *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990), the Court held that in order to conclusively establish rights to a summary judgment, that the motion "must identify or address the cause of action or defense **and** its elements." (Emphasis added). Because the motion for summary judgment did not identify or address causes of action for breach of contract, violations of the DTPA and the Insurance Code, negligence, gross negligence, fraud and breach of duty of good faith and fair dealing, the Court reversed the summary judgment on such claims. Later, in *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 341 (Tex.1993), the Court announced summary judgment pleading rules consistent with Rule 166a(c) of the Texas Rules of Civil Procedure. The

Texas Supreme Court clearly announced that the purpose of the requirement that a motion for summary judgment state the specific grounds therefor was to provide adequate information for the opposing party and to define the issues. The Court also noted the danger of carving exceptions to the simple requirement. Further, the Court stated that summary judgment rules "further the policy of seeking clarity and simplicity in summary judgment practice," and concluded by citing *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990), reaffirming that a motion for summary judgment must identify or address the cause of action or defense and its elements.

Also, in *McConnell*, 858 S.W.2d at 342, the Court recognized that an objection or exception to motions by non-movants is prudent trial practice because it serves to ensure that the parties, as well as the trial court, are focused on the same grounds. Here, GBI and GFC, by their February 13th responses in opposition to the Barrett/Forbes motions, presented their objections that the motions for summary judgment did not address their claims for business disparagement.

■ Moreover, it is well established that it is reversible error to grant summary judgment on a cause of action not addressed in the motion. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993). Where, as here, GBI and GFC amended their petitions to clarify their claims for business disparagement, in addition to their objections/exceptions in their responses to the motions, Barrett and Forbes should have amended or supplemented their motions for summary judgment to address what Barrett and Forbes considered to be a new cause of action. *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex. App.—Houston [1st Dist.] 1996, writ denied). When GBI and GFC filed their responses on February 13th, Barrett and Forbes had sufficient time to amend or supplement their summary judgment motions before the March 20th hearing. However, Barrett and Forbes instead waited until March 13th to file their "replies," which they withdrew at the summary judgment hearing. Accordingly, we sustain points of error one and two as to GBI and GFC. Because our sustention of

points of error one and two requires a reversal and remand of the trial court judgment that GBI and GFC take nothing against Barrett and Forbes, we need not address points of error three, four, five, and eleven. Tex. R.App. P. 90(a).[2]

## Munke

By points of error one and four, GBI and GFC contend that the trial court erred in granting Munke's motion for summary judgment on their business disparagement claims. The other points of error of GBI and GFC do not assign any other error as to Munke. The summary judgment evidence shows that Munke was not the author of the article and she did not publish the article. In her motion for summary judgment, Munke contended, among other grounds, that any statements or information she provided to Barrett and Forbes were true and asserted that the actions for business disparagement should fail as a matter of law. In response, GBI and GFC asserted that Munke supplied false and defamatory information to Barrett and Forbes.

 The elements of a claim for business disparagement are (1) publication of disparaging words by the defendant, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Hurlbut*, 749 S.W.2d at 766. However, specific words or statements must be identified in order to determine whether they are disparaging or false. The pleadings and responses of GBI and GFC do not expressly identify the alleged false and disparaging words or statements which they contend were made by Munke. Because the written responses of GBI and GFC in opposition to Munke's motion for summary judgment did not specify the words or statements which they claim were disparaging and false, they may not now raise them on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

 Moreover, GBI and GFC had the burden of discussing their contentions and

directing this court to the portions of the record which supported their complaints. *Barham v. Turner Const. Co. of Texas*, 803 S.W.2d 731, 740 (Tex.App.—Dallas 1990, writ denied). A court of appeals is not required to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid. *Most Worshipful Prince Hall v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Accordingly, points of error one and four as to Munke are overruled and the summary judgment that GBI and GFC take nothing against Munke is affirmed.

## Linda Eller v. Barrett, Forbes, and Munke Defamation

David and Linda Eller alleged that Barrett, Forbes, and Munke made oral and written defamatory statements which harmed their personal and professional reputations. Barrett and Forbes filed separate motions for summary judgment as to the Ellers' claims. Munke filed a single motion for summary judgment in response to all claims of GBI, GFC, David Eller, and Linda Eller. Summary judgments were granted on September 11, 1995. By points of error one, six, seven, eight, nine, and ten, Linda Eller contends the trial court erred in granting summary judgment in favor of Barrett, Forbes, and Munke. We affirm the judgment that Linda Eller take nothing against Barrett, Forbes, and Munke based on the rationale expressed herein. Point of error ten which concerns Linda Eller's claim for intentional infliction of emotional distress will be discussed separately.

 The law of libel has been codified in the Texas Civil Practice & Remedies Code Ann. §§ 73.001 *et seq.* (Vernon 1997). In a libel action, the first question for determination is whether the words used are reasonably capable of a defamatory meaning, which is a question of law to be decided by the court. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Musser v. Smith Protective Services, Inc.*, 723 S.W.2d 653, 654 (Tex.1987). In determining whether the words used are

---

**2.** Now Texas Rule of Appellate Procedure 47.1 for any appeal perfected on or after September 1, 1997.

reasonably capable of a defamatory meaning, the court considers the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 228 S.W.2d 499, 504 (1950). The question should not be submitted to the jury unless the court determines that the language is ambiguous or of doubtful import. *Musser v. Smith*, 723 S.W.2d at 655.

▮▮▮▮ A private individual, as opposed to a public official, must prove that the publisher knew or should have known that the allegedly defamatory words were false before recovering damages for defamation against a media defendant. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990); *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976). A showing of substantial truth of the allegedly defamatory words defeats a cause of action for defamation. *McIlvain*, 794 S.W.2d at 15. Determining substantial truth involves consideration of the "gist" of the article to resolve whether the allegedly defamatory statements are more damaging to Linda Eller's reputation, in the mind of the average reader, than truthful statements would have been. *Lewis v. A.H. Belo Corp.*, 818 S.W.2d 856, 858 (Tex.App.—Fort Worth 1991, writ denied).

The summary judgment motions of Barrett, Forbes, and Munke as to the claims of Linda Eller assert, among other things, that statements in the article are not defamatory as a matter of law and that Linda Eller cannot complain about any statements about her husband or others. In *Johnson v. Southwestern Newspapers Corp.*, 855 S.W.2d 182, 188 (Tex.App.—Amarillo 1993, writ denied), this Court held that the wife, of a football coach who was the subject of a newspaper article, could not maintain an action for libel because she was not named in the article. Therefore, we will consider the entire article as it relates to Linda Eller to determine if the words used in the article are capable of the defamatory meaning which she attributes to them.

▮▮▮▮ Linda Eller did not identify which statements in the article she claims are defamatory by her pleadings, her responses to the motions for summary judgment, nor in her brief herein. Because her name appears in only one paragraph of the article, we will examine that paragraph in light of the entire article, which reads:

> What they did know was that David Eller was a prominent figure in Houston's celebrity world. He and his wife, Linda, a Granada official who was just voted Houston Business Woman of the Year, were frequently featured on the society pages and photographed for posh national magazines like *Town & Country*. Eller served four years as the board chairman of his alma mater, Texas A & M University, where a building is named after him.

Although the article identifies Linda Eller as a Granada official, it does not expressly, nor by innuendo, indicate that she was responsible for corporate business otherwise mentioned in the article. In *Musser v. Smith Protective Services*, Inc., 723 S.W.2d 653 (Tex.1987), the Court held that a letter concerning a business competitor, although couched in a sarcastic tone which portrayed the competitor as a successful competitor, was not actionable. Even if the Forbes article could be considered as embracing a "hint" of sarcasm, based upon a review of the article as a whole, the words as to Linda Eller are not reasonably capable of a defamatory meaning and therefore, the article was not actionable as to her.

▮▮▮▮ Further, Linda Eller also complained of oral defamatory words. However, she did not specify or identify the alleged oral statements which she deemed to be defamatory and therefore, actionable as slander as opposed to libel. In her responses in opposition to the motions for summary judgment she complained only of libelous statements. Because Linda Eller's written responses in opposition to the summary judgment motions failed to identify specific oral words which she claimed were slanderous or defamatory, she may not now raise them on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979).

 Moreover, because the summary judgment does not specify or state the grounds relied on, it will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). A judgment will be affirmed if it rests upon independent grounds to which no point of error is assigned. *Scott v. Galusha*, 890 S.W.2d 945, 950 (Tex.App.—Fort Worth 1994, writ denied). The motions for summary judgment of Barrett, Forbes, and Munke assert, among other defenses and grounds, that the statements in the article were substantially true and urged truth as a defense. *See* Tex. Civ. Prac. & Rem.Code Ann. § 73.005 (Vernon 1997). In her responses to the motions, Linda Eller contends that the statements are not substantially true. However, she does not present a point of error raising falsity on appeal. Truth is an absolute defense, *Mitcham v. Bd. of Regents, University of Tex.*, 670 S.W.2d 371, 373 (Tex.App.—Texarkana 1984, no writ), but because Linda Eller does not assign a point of error on falsity, the question of falsity is not preserved for our review. Accordingly, points of error one, six, seven, eight, and nine as to Linda Eller are overruled and the summary judgments that Linda Eller take nothing against Barrett, Forbes, and Munke are affirmed.

### David Eller v. Barrett, Forbes, and Munke Defamation

David Eller also alleged that Barrett and Forbes made oral and written false and disparaging statements which harmed his personal and professional reputation. Barrett and Forbes filed a summary judgment motion as to the claims of David Eller, and Munke filed her own motion for summary judgment against the claims of GBI, GFC, and David and Linda Eller. The motions for summary judgment were granted on September 11, 1995. By points of error one, six, eight, nine, and ten, David Eller contends the trial court erred in granting summary judgments to Barrett, Forbes, and Munke. Without deciding whether the article was defamatory and actionable as to David Eller, we affirm the take-nothing summary judgments as to David Eller based on the rationale expressed herein. Point of error ten which concerns David Eller's claim for intentional infliction of emotional distress will be discussed separately.

 In *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979), the Court held that a non-movant must expressly present a written response to the trial court of issues that would defeat the movant's right to a summary judgment as a prerequisite to assigning error on those issues on appeal. When a summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). In order for a non-movant to obtain reversal of a summary judgment that does not specify the grounds on which it is based, the non-movant must show that each independent ground alleged in the motion was insufficient to support the judgment. *Williams v. Crum & Forster Commercial Ins.*, 915 S.W.2d 39, 43 (Tex.App.—Dallas 1995, no writ); *Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 143 (Tex.App.—San Antonio 1991, writ denied). Notwithstanding a non-movant's challenge to summary judgment grounds in a written response, the summary judgment must be affirmed when the non-movant does not assign error in the court of appeals challenging each independent ground asserted in the summary judgment motion. *See San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex.1990); *Scott v. Galusha*, 890 S.W.2d 945, 950 (Tex.App.—Fort Worth 1994, writ denied).

In their motions for summary judgment, Barrett, Forbes, and Munke contend, among other grounds, that the statements in the article are substantially true. In his response in opposition to the motions, David Eller raised the issue that the statements were not substantially true. However, he does not present a point of error raising falsity on appeal. Without a properly assigned point of error, we must affirm the summary judgments as to David Eller. Because we affirm on this issue, we need not address other contentions raised in David Eller's points of error. Tex.R.App. P. 90(a). Accordingly, points of error one, six, eight,

and nine as to David Eller are overruled, the summary judgments that David Eller take nothing against Barrett, Forbes, and Munke are affirmed.

## Intentional Infliction of Emotional Distress

By points of error one and ten, David and Linda Eller contend that the trial court erred in granting summary judgment on their claims for intentional infliction of emotional distress. Although the Ellers originally complained of negligent infliction of emotional distress, as well as false light and invasion of privacy, they do not present any points of error regarding these causes of action.

Intentional infliction of emotional distress was first recognized in Texas in *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993). Later, in *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995), upon concluding that certain conduct by defendant was not "extreme and outrageous" as a matter of law, the Court held that in order to recover for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (4) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Randall's Food Markets*, 891 S.W.2d at 644; *see also, Schauer v. Memorial Care Systems*, 856 S.W.2d 437, 451 (Tex. App.—Houston [1st Dist.] 1993, no writ). Under *Twyman* and *Randall's Food Markets*, the definition of extreme and outrageous conduct means conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621; *Randall's Food Markets*, 891 S.W.2d at 644.

The Ellers contend that Barrett's treatment of them by leading them to believe he was interested in the corrections of his allegedly false and defamatory facts, and then rushing the article to publication without correcting any of those allegedly false facts, is conduct sufficient to establish the tort of intentional infliction of emotional distress. We disagree.

Although Barrett's conduct may be described as aggressive journalism, the summary judgment evidence established as a matter of law that Barrett's conduct was not extreme and outrageous, an essential element of the tort of intentional infliction of emotional distress. The Ellers rely on *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612 (Tex.App.—Corpus Christi 1992, writ denied), in support of their contention that the conduct was extreme and outrageous. The basis of the action in *Mitre* was that the representatives of a shopping mall falsely accused the plaintiffs of the criminal act of passing counterfeit bills. Mall security officers went so far as to distribute copies of photographs of the plaintiffs to other shops in the mall informing them that the plaintiffs were passing counterfeit bills and the individual shop managers then prominently displayed the photographs. The conduct of Barrett and Forbes does not rise to the extreme and outrageous level of the conduct of the shopping mall and individual shop managers. Because the article did not accuse the Ellers of any criminal conduct and because portions of the article were complimentary to the Ellers, *Mitre* is not controlling. Accordingly, points of error one and ten as to the Ellers are overruled, and the summary judgment that the Ellers take nothing against Barrett and Forbes on their claims for intentional infliction of emotional distress is affirmed.

Accordingly, that portion of the judgment dated September 11, 1995, that Granada BioSciences, Inc. and Granada Foods Corporation take nothing against William P. Barrett and Forbes, Inc. is severed, and the severed portion is reversed and remanded to the trial court. The portion of the judgment dated September 11, 1995, that David Eller and Linda Eller take nothing against William P. Barrett and Forbes, Inc. is affirmed.

Furthermore, the order granting summary judgment dated September 11, 1995, that Granada BioSciences, Inc., Granada Foods Corporation, David Eller and Linda Eller take nothing against Cheryl Munke is affirmed.

## APPENDIX

Houston's Granada Corp. talks of 1991 revenues of $2 billion. Try $200 million. This much-touted high-tech food concern is near collapse.

# The incredible shrinking empire

By William P. Barrett

IN 1989 THE *Wall Street Journal* included Granada Corp. among its "corporate stars of the future." The newspaper cited the research by this Houston-based parent of several public and private entities into cattle cloning and embryo transfers. The plug was but one more triumph in the relentless and largely successful quest for publicity by David Eller, Granada's chairman and chief executive. Newer news clippings, which Granada's press agents still hand out, call Granada a $1 billion organization. In mid-October a Granada executive told FORBES that revenues this year would reach $2 billion.

But there is less to Granada than meets the eye. Actually, its total revenues, $1 billion as recently as 1988, will scarcely be $200 million for 1991. Profits: zilch. Granada's work force has shrunk to below 900 from 2,200; its cattle herd has dwindled to 25,000 from 1 million.

There are two publicly traded stock companies within the Granada organization, Granada Foods (1990 revenues, $149 million) and Granada BioSciences ($16 million). They are so broke they haven't been able to publish their 1990 annual reports. The Granada organization is vacating the Houston headquarters building it co-owns with the Eller family so the property can be sold to satisfy the mortgage holder. In addition, Granada is beset with a series of serious shareholder lawsuits.

Granada is yet another case of the media and many investors taking exaggerated claims at face value. In 1972 David Eller, now 53, and his brother James, 59, founded Granada

Granada's David Eller
No money to print the annual report.

Corp., which they still own 50-50. Stated purpose: to bring high technology to the ancient craft of farming, mainly cattle farming. Indeed, starting in the late 1970s Granada earned a reputation for research into ways of transferring bovine embryos and cloning the perfect cow. The idea was that genetically engineered cattle would produce more meat or milk cheaper.

From 1975 on, the outfit was largely financed by tax-sheltered limited partnerships. A petroleum engineer by background, with an easy, genial demeanor, David Eller proved to be one terrific salesman. In a series of five limited partnerships formed from 1981 to 1986, he raised $249 million. These interests were later rolled over—without a vote of limited partners—into Granada Foods and Granada BioSciences, still majority-owned by the Ellers.

Today that $249 million in public

money has a market value of only $76 million. The development cost of all this whiz-bang technology proved to be so expensive that old-fashioned cattle breeding techniques, including artificial insemination, were a lot cheaper. Granada's overhead was also quite high. "We got science conquered, but our efficiencies were very poor," Eller concedes.

Granada lost an estimated $30 million speculating in cattle commodities, then couldn't sell off its own stock profitably. Plans to set up a vertically integrated operation including eateries and retail stores foundered. And a large amount of funds was drained off into the Eller family through management fees and transactions with enterprises it controlled. The big 1986 changes in the tax laws cut off the flow of new funds into the Granada partnerships because they removed most of the tax incentives for investing in them.

Yet even while its affairs were deteriorating, Granada managed to hide the facts from the outside world. How? Through its complex corporate structure, which involved a score of interlocking entities, most of them private. Their dealings with one another exaggerated Granada's actual revenues. The partners did not know the overall picture.

What they did know was that David Eller was a prominent figure in Houston's celebrity world. He and his wife, Linda, a Granada official who was just voted Houston Business Woman of the Year, were frequently featured on the society pages and photographed for posh national magazines like *Town & Country*. Eller served four years as the board chairman of his alma mater, Texas A&M University, where a building is named after him.

But now the image is fraying fast. According to their latest filings, Granada Foods (recently trading at 5½) and Granada BioSciences (recently 6¼) are losing money and have negative cash flows from operations. Recently laid off employees - even ten year veterans—got only two weeks' severance plus vacation. Many vendors have Granada on a C.O.D basis. Last year Granada BioSciences announced executives had bought $300,000 of stock with company loans, a seeming vote of confidence

EXHIBIT

1

Granada Corp.

Only later did it become known that the company would cover any losses.

Eller's team is scrambling for fresh funds to keep going—really scrambling. In mid-September, according to Houston deed records, a Granada Foods subsidiary got a $2 million bank loan—but only after the Eller family signed personal guarantees and also posted some unrelated collateral. Attempts by Granada to find joint venture partners have been unsuccessful. Even Texas A&M balked at supporting a bond issue that would have helped Granada. Contracts selling goods or technology to foreign buyers, announced by Granada Bio-Sciences amid much hoopla, have generated little money.

In a Houston court pleading this summer, one Granada entity acknowledged huge unpaid legal bills—a virtual admission of insolvency. Not surprising. A half-dozen serious lawsuits are moving toward trial, filed by disgruntled Granada investors claiming Eller and others misled them over the years or siphoned off assets. One investor lawsuit accuses Granada of touting tax-writeoff advantages while aware the Internal Revenue Service had successfully challenged deductions by individual taxpayers. Among the many people suing Granada is Fort Worth near-billionaire Edward Bass. Granada responds it has done nothing wrong.

Possibly anticipating a bankruptcy filing, former Granada employees say officials in recent months have moved some farm equipment and vehicles off Granada books and gotten rid of backup documentation. Eller denies any improprieties. But this is not exactly unheard-of stuff at Granada; in the course of continuing litigation, a Granada employee admitted under oath that he signed back-dated loan and corporate documents at the direction of superiors. Other embarrassing documents have also surfaced.

Don't write Granada off—completely. You can't rule out that some larger company will buy part or all of the Granada organization, or that Eller will find foreign joint venture partners with deep pockets. David Eller is one resourceful man. But his unfortunate fellow shareholders can kiss most of their original investment good-bye.