Opinion issued July 25, 2002







 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00610-CV






JAMES STRASSER, Appellant


V.


SULZER MEDICA U.S.A., INC. AND SULZER ORTHOPEDICS, INC., 
Appellees






On Appeal from the 61st District Court

Harris County, Texas

Trial Court Cause No. 2000-42078






O P I N I O N

 Appellant, James Strasser, appeals from a rule 166a(c) take-nothing summary
judgment rendered on all his claims against appellees (together, "Sulzer"). In two
issues, Strasser makes three arguments that summary judgment was improperly
rendered on the motion's sole ground of limitations. First, Strasser argues that the trial
court erroneously granted summary judgment because movant Sulzer's summary
judgment motion failed to address each cause of action and affirmative defense raised
by Strasser. Second, Strasser argues that he conclusively proved his fraudulent-concealment defense. Third, Strasser asserts that movant Sulzer, as a matter of law,
failed to meet its burden of proof that California's one-year limitations law applies.
We affirm in part and reverse in part and remand.

Standard of Review and Burden of Proof


 We follow the usual standard of review for a rule 166a(c) summary judgment
order not specifying grounds. See Tex. R. Civ. P. 166a(c); Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001). Limitations is an affirmative defense on which
movant Sulzer had the burden of proof. See Tex. R. Civ. P. 94; Woods v. William
Mercer, Inc., 769 S.W.2d 515, 517 (Tex. 1988).

Background


 The factual and procedural timelines are important.

 Strasser is a Wisconsin resident. Sulzer is composed of Texas corporations. In
July 1997, Strasser had hip-prosthesis surgery in California to replace a prior
prosthesis he had received a few years earlier and had damaged in a fall. Strasser
alleged that Sulzer's hip prosthesis, which is the basis of this suit, was used in the
1997 surgery. In May 1998, Strasser began having pain in his hip. He eventually had
a third hip-replacement surgery on August 20, 1998.

 Strasser sued Sulzer on August 17, 2000 for strict product liability (on various
theories), negligence, and implied and express warranty breach based on the allegedly
defective hip prosthesis used in the 1997 surgery. On February 23, 2001, Sulzer
moved for rule 166a(c) summary judgment on limitations. Strasser filed a summary
judgment response on March 30, 2001, the same day that he amended his petition to
add claims for contract breach and fraud and to assert the defense of fraudulent
concealment. (1) On April 5, 2001, Sulzer filed a summary judgment reply, asserting for
the first time grounds against the two claims in the amended petition. On April 6,
2001, the trial court granted summary judgment without specifying grounds and
simultaneously rendered a take-nothing judgment on all Strasser's claims.



Limitations


A. Claims New to the First Amended Petition

 The first amended petition asserted contract-breach and fraud claims. The
earlier-filed summary judgment motion understandably did not expressly attack these
two claims. "It is axiomatic that one may not be granted judgment as a matter of law
on a cause of action not addressed in a summary judgment proceeding." Chesser v.
Southwestern Bell Tel., 658 S.W.2d 563, 564 (Tex. 1983); see McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) ("A motion must stand or fall on
the grounds expressly presented in the motion.").

 1. Grounds Raised by Summary Judgment Reply and New Trial
Response


 Sulzer responds that it challenged Strasser's contract-breach and fraud claims
by summary judgment reply, filed the day before the summary judgment hearing, and
in its response to Strasser's new trial motion. Neither method sufficed.

 On review of a summary judgment order, we may not consider grounds raised
in a new trial pleading. See McConnell, 858 S.W.2d at 341; cf. Morin v. Helfrick, 930
S.W.2d 733, 738 (Tex. App.--Houston [1st Dist.] 1996, no writ) (refusing to consider
evidence offered to support new trial motion because that evidence was not before trial
court at time of summary judgment hearing), overruled on other grounds, Rizkallah
v. Conner, 952 S.W.2d 580, 585 n.4 (Tex. App.--Houston [1st Dist.] 1997, no writ). 
Nor may we consider the grounds in Sulzer's summary judgment reply brief: causes
of action pled after the summary judgment motion's filing must be addressed by
amended or supplemental motion, not by reply brief. See Elliott v. Methodist Hosp.,
54 S.W.3d 789, 793-94 (Tex. App.--Houston [1st Dist.] 2001, pet. denied); (2) see also
McConnell, 858 S.W.2d at 341 (summary judgment grounds must appear in motion,
not in briefs or evidence). Moreover, even if Sulzer's reply brief could be considered
an amended or supplemental motion, which it cannot, that pleading would still not
have been served the required 21 days before the hearing. See Tex. R. Civ. P. 166a(c).

 2. Breadth of Summary Judgment Motion's Grounds

 Sulzer next responds that the grounds in its summary judgment motion were
broad enough to encompass the two, later-pled claims because the later claims were
simply the original tort claims renamed to avoid limitations.

 This Court has recognized an exception to the rule that a movant must amend
or supplement its summary judgment motion expressly to address claims pled after the
original motion's filing. If the summary judgment grounds are broad enough to
contemplate all causes of action later pled, then summary judgment may properly be
rendered on the later claims even without an amended or supplemental motion. (3) See
Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d 498, 502 (Tex. App.--Houston
[1st Dist.] 1995, no writ); accord Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d
663, 671-72 (Tex. App.--Houston [1st Dist.] 1996, no writ); see also Elliott, 54
S.W.3d at 794 n.4 (distinguishing Judwin).

 The summary judgment motion asserted that limitations, under both California
and Texas law, barred the three original claims, the discovery rule notwithstanding. 
That defense does not automatically apply to any and all later-pled claims because
limitations is claim-specific. (4) Similarly, the discovery rule might apply to some
claims, but not to others. Therefore, it was Sulzer's burden to establish the limitations
and accrual date specific to each claim, including the later-pled contract-breach and
fraud claims. Sulzer did not do this. Furthermore, as the movant urging the
application of another state's law, it was Sulzer's burden to show whether California
law applied to these new claims, to ask the court to recognize that law if so, and to
show what the California limitations period for contract breach and fraud was. Cf.
Tex. R. Evid. 202; Hughes Wood Prods. v. Wagner, 18 S.W.3d 202, 204-05 (Tex.
2000); Lemmon v. United Waste Sys., Inc., 958 S.W.2d 493, 499 (Tex. App.--Fort
Worth 1997, pet. denied). Sulzer did not do this, either. Sulzer did argue the two new
claims were nothing more than tort claims impermissibly cast as something else to
defeat limitations, but did so only in its reply brief, the grounds of which we may not
consider. See Elliott, 54 S.W.3d at 793-94; see also McConnell, 858 S.W.2d at 341. 

 We thus hold that the summary judgment motion was not broad enough to reach
the later-pled claims. See Farah, 927 S.W.2d at 671-72 (summary judgment motion's
grounds of limitations and statute of frauds were not broad enough to address later-pled claims based on promissory estoppel; in contrast, summary judgment motion's
ground that all tort claims sounded only in contract was broad enough to address later-pled tort claim based on negligent misrepresentation).

 We distinguish the cases on which Sulzer relies because, in each of them, the
summary judgment motion attacked an element of, or asserted a defense against, then-existing claims and that challenged element was common to, or that asserted defense
necessarily applied equally to, the later-pled claims. (5) For the reasons given above, that
is not true here. 

 Accordingly, we sustain those portions of both issues challenging summary
judgment against Strasser's contract-breach and fraud claims.

B. Claims Expressly Addressed by the Summary Judgment Motion

 Sulzer's summary judgment motion attacked Strasser's claims of strict product
liability, negligence, and warranty breach on the following grounds:

 Texas Civil Practice and Remedies Code section 71.031(a)(3)
required application of California's 1-year limitations period for
all three claims; each claim accrued more than a year before suit's
filing, the discovery rule notwithstanding; and all claims were thus
time-barred.


 Alternatively, if only the Texas limitations periods applied, then
a 2-year statute of limitations applied to each claim, making each
claim time-barred because Strasser was aware of potential
problems with the implant by May 20, 1998 or, alternatively, in
July 1998. (6)

 Strasser has never challenged the summary judgment motion's assertion that
California recognizes a 1-year limitations period for strict product liability, negligence,
and warranty claims based on personal injury. We thus assume without deciding that
this California limitations period is accurate. See McConnell, 858 S.W.2d at 341; see
also Tex. R. App. P. 33.1(a). We also assume without deciding that the discovery rule
could apply to each of Strasser's claims because Sulzer has never argued otherwise. 
See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 224 (Tex. 1999); McConnell, 858
S.W.2d at 341. We further assume without deciding that the California discovery rule
functions the same as that of Texas because Sulzer did not argue or show a difference
between the two. See Ogletree v. Crates, 363 S.W.2d 431, 435 (Tex. 1963).

 1. The Discovery Rule

 Sulzer acknowledged that Strasser pled the discovery rule in his first amended
petition. It was thus Sulzer's burden to prove the three claims' accrual date and,
assuming as we must that the discovery rule applied here, conclusively to negate the
discovery rule. See Steel, 997 S.W.2d at 224; Burns v. Thomas, 786 S.W.2d 266, 267
(Tex. 1990). 

 "A cause of action generally accrues, and the statute of limitations begins to run,
when facts come into existence that authorize a claimant to seek a judicial remedy." 
Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998). 
"In most cases, a cause of action accrues when a wrongful act causes an injury,
regardless of when the plaintiff learns of that injury or if all resulting damages have
yet to occur." Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998). The discovery
rule defers a claim's accrual date if the wrongful act and resulting injury were
inherently undiscoverable at the time they occurred, but may be objectively verified. 
S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996). To be inherently undiscoverable, an injury
must be unlikely to be discovered within the prescribed limitations period despite due
diligence. Id. 

 Strasser claims that the discovery rule tolled limitations through August 20,
1998, the third hip-surgery date. Sulzer claims, however, that the discovery rule tolled
limitations at most through May 1998, when Strasser first felt hip pain after the second
surgery, or alternatively through only July 1998, when the surgeon suspected
unspecified problems with the Sulzer implant.

 Sulzer's summary judgment motion relied on Strasser's response to requests for
admissions and his deposition, in which he admitted he first started having pain in his
right hip in May 1998. However, Strasser's deposition also showed (1) the pain he
experienced in May 1998 was different from the pain he had experienced when he
damaged the first hip prosthesis; (2) the May 1998 pain was in his groin, down his leg,
and in his right hip; (3) Strasser had had groin pain associated with back problems
before, although the back-related pain differed somewhat; (4) in May 1998, Strasser
saw a Wisconsin doctor about his pain, but that doctor did not know what was wrong
and advised Strasser to stay off his leg for a month or so; (5) when that strategy did not
work, the Wisconsin doctor sent Strasser to California surgeon Dr. Steel in July 1998;
and (6) Dr. Steel initially suspected Strasser's pain was caused by an infection from
the body's rejecting the Sulzer prosthesis. Viewed in the proper light, this evidence
shows Strasser diligently sought the source of his pain starting in May 1998, but that
his doctors first suspected only injury that had nothing to do with the Sulzer
prosthesis's functioning, e.g., infection from the body's rejecting the prosthesis or
overuse of the leg. Accordingly, Sulzer did not conclusively negate the discovery rule
so as to prove that the cause of action accrued in May 1998.

 However, Dr. Steel ruled out infection as a cause in July 1998, shortly after
Strasser came to see him. It is undisputed that Dr. Steel recommended exploratory
surgery at that point in July 1998 to "find out what was wrong" because X-rays did not
reveal anything drastically wrong and because the doctor was "concerned that
[Strasser] had a problem with [his] implant." (7) In fact, Strasser admitted that he knew
going into the exploratory surgery that Dr. Steel intended to replace at least part of the
prosthesis during that surgery. Given these undisputed facts, the discovery-rule period
was not extended simply because Dr. Steel still did not know the exact cause of injury
when he decided to operate in July 1998: at the point Dr. Steel told Strasser he would
replace at least part of the prosthesis, the wrongful act (potentially defective
prosthesis) and resulting injury were no longer inherently undiscoverable, i.e., unlikely
to be discovered despite due diligence. See S.V., 933 S.W.2d at 6 (setting out criteria
for discovery rule's application); cf. Childs, 974 S.W.2d at 36 ("In most cases, a cause
of action accrues when a wrongful act causes an injury, regardless . . . if all resulting
damages have yet to occur.") (emphasis added). 

 We hold that Sulzer conclusively negated the discovery rule's application after
July 1998, which also means Sulzer conclusively proved that all three causes of action
accrued sometime in July 1998.

 2. Strasser's Strict Product Liability and Negligence Claims

 Sulzer's summary judgment motion alleged Texas Civil Practice and Remedies
Code section 71.031(a)(3) applied to Strasser's three claims, requiring Strasser to
comply with the California limitations law. See Tex. Civ. Prac. & Rem. Code Ann.
§ 71.031(a)(3) (Vernon 1997). Strasser responded here and below that section
71.031(a)(3) did not apply, arguing instead that the Texas limitations law controlled.

 Strasser's claims for negligence and strict product liability have 2-year
limitations periods under Texas law. (8) We have already held that these claims accrued
no later than July 1998. Strasser filed suit in August 2000. Thus, even assuming
without deciding that only the longer Texas limitations period applied, Strasser's
negligence and strict product liability claims were barred--provided that fraudulent
concealment, which Strasser also asserted here and below, did not toll limitations. 

 Fraudulent concealment is an affirmative defense to limitations. See Arabian
Shield Dev. Co. v. Hunt, 808 S.W.2d 577, 584 (Tex. App.--Dallas 1991, writ denied).
The non-movant plaintiff may produce evidence of fraudulent concealment to avoid
summary judgment after the movant defendant conclusively proves its limitations
defense, as Sulzer did here. Nichols v. Smith, 507 S.W.2d 518, 521 (Tex. 1974). 
Fraudulent concealment applies when a defendant has a duty to disclose a cause of
action to a plaintiff, but fraudulently conceals the claim's existence. Borderlon v.
Peck, 661 S.W.2d 907, 909 (Tex. 1983). The plaintiff must provide evidence of
specific facts demonstrating the defendant's actual knowledge of a wrong, duty to
disclose the wrong, and a fixed purpose to conceal the wrong. Casey v. Methodist
Hosp., 907 S.W.2d 898, 903 (Tex. App.--Houston [1st Dist.] 1995, no writ).

 Strasser supported his fraudulent-concealment defense with his deposition
testimony, his affidavit, his interrogatory answers, and the "legal theories" section of
his disclosures made under Rule of Civil Procedure 194. See Tex. R. Civ. P. 194.

 The deposition testimony on which Strasser relies on appeal showed simply that
Strasser told Sulzer's risk management director, David Collins, what had happened;
Collins investigated the claim and then offered Strasser $7,500; and Strasser rejected
that offer. Neither this testimony nor any other deposition testimony on which
Strasser relies addressed the elements identified in Casey. Strasser's affidavit set out
the same facts concerning Collins as did Strasser's deposition, and for the same
reasons the affidavit did not carry Strasser's burden. The affidavit also stated that
"Defendant knew that the subject hip prosthesis was defective" and did not inform
Strasser, but the quoted statement is conclusory and thus incompetent summary
judgment proof, despite Sulzer's failure to obtain a ruling on this objection below. See
Green v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126, 130 (Tex. App.--Houston
[1st Dist.] 1999, no pet.); Rizkallah, 952 S.W.2d at 587. Similarly, Strasser's
interrogatory answers were incompetent evidence to use in his favor, even without an
objection. See Garcia v. Nat'l Eligibility Express, Inc., 4 S.W.3d 887, 890-91 (Tex.
App.--Houston [1st Dist.] 1999, no pet.); see also Tex. R. Civ. P. 197.3. Finally, the
fraudulent-concealment legal theory set out in Strasser's rule 194 disclosures was not
even evidence and additionally was self-serving and conclusory. See Tex. R. Civ. P.
194.2(c).

 We hold that Strasser did not carry his burden of proving his fraudulent-concealment defense. 

 We thus overrule those portions of Strasser's issues challenging the summary
judgment rendered against his strict product liability and negligence claims.

 3. Strasser's Warranty-Breach Claims

 Strasser's express and implied warranty-breach claims have 4-year limitations
periods under Texas law. See Tex. Bus. & Comm. Code Ann. 2.725(a), (b) (Vernon
1994); Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez, 995 S.W.2d 661, 668 (Tex.
1999); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 435 (Tex. 1997). If solely the
Texas limitations period applied, then these claims would be timely even without the
discovery rule. If, however, Sulzer was correct that section 71.031(a)(3) required
application of the California limitations law (which we must presume was one year),
then these claims would be untimely even with the discovery rule. Accordingly, we
must decide whether section 71.031(a)(3) applies.

 Section 71.031(a)(3) provides in pertinent part as follows:

 § 71.031. Act or Omission Out of State.


 (a) An action for damages for the . . . personal injury of a citizen . . .
of the United States . . . may be enforced in the courts of this state,
although the wrongful act, neglect, or default causing the . . . injury takes
place in a foreign state . . . if:


 . . .


 (2) the action is begun in this state within the time provided by
the laws of this state for beginning the action; [and]


 (3) for a resident of a foreign state . . ., the action is begun in
this state within the time provided by the laws of the foreign state . . . in
which the wrongful act, neglect, or default took place . . . .


Tex. Civ. Prac. & Rem. Code Ann. § 71.031(a). The parties dispute only whether
Sulzer proved the wrongful act, neglect, or default "took place" in California. See id.,
§ 71.031(a), (a)(3).

 The summary judgment motion's sole argument about where the wrong took
place was that "the allegedly defective prosthesis at issue in this case is the one
implanted in California in 1997. Therefore, the cause of action accrued in California." 
The only evidence offered in support was that Strasser's second hip-replacement
surgery took place in California.


 Strasser's warranty-breach claims were each based in some way on alleged
design and manufacturing defects or failure to warn of those alleged defects. As
Strasser's brief notes, his petition alleged that Sulzer was located and authorized to do
business in Texas, implying that the alleged underlying misconduct (design and
manufacturing defects and failure to warn) likely also occurred in Texas. Sulzer's
motion offered no evidence or explanation to refute this allegation. Although it is not
part of the summary judgment record, we find it telling that Sulzer recognized in its
reply to Strasser's new trial response that "the product may have been designed or
manufactured in Texas."

 Given the allegations, Sulzer could have attempted to prove, for example, that
the prosthesis's sale was not consummated or discussed in Texas (9) or that the product
was not delivered in, (10) produced in, marketed in, or distributed from Texas. (11) Sulzer
did not.

 Accordingly, Sulzer did not prove as a matter of law that the alleged wrong took
place in California, not in Texas. Sulzer thus did not conclusively prove that section
71.031(a)(3) controlled. Sulzer's entire summary judgment ground on California
limitations stood or fell on section 71.031(a)(3). Accordingly, for purposes of
summary judgment, Texas limitations law applied, which law allowed Strasser four
years to file suit.

 Because no relevant date in this case occurred more than four years from the
date suit was filed, we hold Sulzer was not entitled to summary judgment against
Strasser's warranty-breach claims on the ground of limitations, and we sustain those
portions of Strasser's issues challenging the summary judgment rendered against his
warranty-breach claims.

Conclusion


 We affirm the summary judgment order insofar as it rendered a take-nothing
judgment on Strasser's claims for negligence and strict product liability. We reverse
the summary judgment order in all other respects, and we remand the cause to the trial
court for further proceedings.



 Michael H. Schneider

 Chief Justice



Panel consists of Chief Justice Schneider and Justices Nuchia and Smith. (12)


Justice Cohen, who retired from the Court before issuance of this opinion, not
participating.


Do not publish. Tex. R. App. P. 47.
1. The first amended petition appears to assert "fraudulent concealment" as a
cause of action, but fraudulent concealment is an affirmative defense to
limitations. See Arabian Shield Dev. Co. v. Hunt, 808 S.W.2d 577, 584 (Tex.
App.--Dallas 1991, writ denied).
2. Accord Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., 48
S.W.3d 865, 885 n.8 (Tex. App.--Houston [14th Dist.] 2001, pet. denied);
Guest v. Cochran, 993 S.W.2d 397, 402-03 (Tex. App.--Houston [14th Dist.]
1999, no pet.); Zezulka v. Thapar, 961 S.W.2d 506, 511 n.5 (Tex.
App.--Houston [1st Dist.] 1997), rev'd on other grounds, 994 S.W.2d 635
(Tex. 1999); Granada Biosciences, Inc. v. Barrett, 958 S.W.2d 215, 221 (Tex.
App.--Amarillo 1997, pet. denied); McKillip v. Employers Fire Ins. Co., 932
S.W.2d 268, 271 (Tex. App.--Texarkana 1996, no writ); Sanders v. Capitol
Council, Boy Scouts of Am., 930 S.W.2d 905, 911 (Tex. App.--Austin 1996,
no writ); Smith v. At. Richfield Co., 927 S.W.2d 85, 88 (Tex. App.--Houston
[1st Dist.] 1996, writ denied); RR Publ'n & Prod. Co. v. Lewisville Indep. Sch.
Dist., 917 S.W.2d 472, 473-74 (Tex. App.--Fort Worth 1996, no writ).
3. Strasser also argues that the summary judgment motion failed entirely because
it addressed only the original petition, not the amended one. We disagree. The
summary judgment motion attacked all three claims in the original petition. 
The first amended petition reasserted the same three claims and added two
more. The motion obviously contemplated at least the three causes of action
that were simply repled in the amended petition. See Judwin Props., Inc. v.
Griggs & Harrison, 911 S.W.2d 498, 502 (Tex. App.--Houston [1st Dist.]
1995, no writ). Accordingly, we overrule this argument under both issues. We
distinguish Cook v. Brundidge, on which Strasser relies, because it did not
concern amended or supplemental petitions. See 533 S.W.2d 751, 759 (Tex.
1976).
4. Compare Mellon Serv. Co. v. Touche & Ross Co., 17 S.W.3d 432, 435 n.1
(Tex. App.--Houston [1st Dist.] 2000, no pet.) (2-year limitations period for
negligence) and Knowlton v. U.S. Brass Corp., 864 S.W.2d 585, 605 (Tex.
App.--Houston [1st Dist.] 1993) (2-year limitations period for strict product
liability), affirmed in part on other grounds, rev'd in part on other grounds,
Amstadt v. U.S. Brass Corp., 919 S.W.2d 644 (Tex. 1996) with Tex. Bus. &
Comm. Code Ann. 2.725(a), (b) (Vernon 1994) (4-year limitations period for
contract breach or warranty breach in sale of goods), Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(3), (4) (Vernon Supp. 2002) (4-year limitations period
for "debt" (contract breach) and fraud).
5. In Judwin Properties, Inc. v. Griggs & Harrison, the non-movant's
counterclaim had not alleged a cause of action, but had instead made factual
allegations of damages that were couched in tort, contract, and fiduciary-duty
breach. 911 S.W.2d 498, 503 (Tex. App.--Houston [1st Dist.] 1995, no writ). 
The summary judgment motion attacked the damages element of all possible
claims contemplated in the non-movant's original counterclaim, even though
the motion also characterized the counterclaim as one for contract breach. Id.
at 502. The non-movant later "clarified" its causes of action in an amended
pleading as contract breach, warranty breach, fiduciary-duty breach, and
negligence. Id. at 503. Under those specific circumstances, not present here,
we held that the motion contemplated the claims that were "eventually
specified" in the amended counterclaim. Id. In McIntyre v. Wilson, the movant
sought summary judgment on the ground of absolute privilege for statements
made in judicial proceedings. 50 S.W.3d 674, 685 (Tex. App.--Dallas 2001,
pet. denied). Because a later-pled claim of negligent misrepresentation was
based on trial testimony, the motion's ground sufficiently encompassed the
new claim. Id. In Lampasas v. Spring Center, Inc., an amended petition filed
after the summary judgment motion asserted new variations (also pled as
negligence) of the original petition's negligence claim. 988 S.W.2d 428, 435
(Tex. App.--Houston [14th Dist.] 1999, no pet.). The rule 166a(i) motion had
alleged no evidence of duty, breach, or causation to support the original
negligence claim; these elements were common to any negligence claim pled
in any petition; and the non-movant produced no evidence of these elements. 
Id. at 436-37. Thus, summary judgment was proper on all claims. Id. at 437. 
The opinion in Smith v. Heard does not support Sulzer because the court there
held that the Judwin exception did not apply to a claim for violation of the
Texas Debt Collection Practices Act when that claim (1) did not stem from
attorney malpractice, as did the other claims, and when (2) the summary
judgment grounds applicable to the malpractice claims were not broad enough
to encompass the new claim. 980 S.W.2d 693, 697-98 (Tex. App.--San
Antonio 1998, pet. denied). 
6. We disagree with the claim in Strasser's brief that the summary judgment
motion did not address the discovery rule under Texas law. The discovery rule
is the whole gist of the motion's ground that "Strasser was aware of the fact
that he may have a problem with his implant in May 1998 . . . ."
7. That concern was confirmed when Dr. Steel performed the third hip-replacement surgery and discovered the prosthesis was "completely wore out,"
which the doctor told Strasser shortly after the surgery.
8. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 1997) (negligence);
Mellon Serv. Co. v. Touche & Ross Co., 17 S.W.3d 432, 435 n.1 (Tex.
App.--Houston [1st Dist.] 2000, no writ) (negligence); See Hyundai Motor Co.
v. Rodriguez ex rel. Rodriguez, 995 S.W.2d 661, 668 (Tex. 1999) (dictum,
strict liability torts); Knowlton, 864 S.W.2d at 605.
9. See Tex. Bus. & Comm. Code Ann. § 2.313(a) (Vernon 1994) (express
warranty can be created, among other ways, by seller's affirmation or promise
that becomes basis of bargain); id. § 2.314 (Vernon 1994) (implied warranty
of merchantability is implied in sales contract under certain conditions); id. §
2.315 (Vernon 1994) (implied warranty of fitness for particular purpose exists
if seller has "reason to know" of buyer's particular purpose and reliance).
10. Cf. Tex. Bus. & Comm. Code Ann. 2.725(b) (Vernon 1994) ("A breach of
warranty occurs when tender of delivery is made . . . .").
11. Cf. Sanchez ex rel. Estate of Galvan v. Brownsville Sports Ctr., Inc., 51 S.W.3d
643, 668-69 (Tex. App.--Corpus Christi, 2001, pet. granted) (in context of
choice-of-substantive-law analysis, noting wrongful conduct underlying
negligence and strict liability claims, which were based on similar product-liability theories, took place in jurisdiction in which product was designed or
manufactured or in which product entered stream of commerce). 
12. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.