Deborah MORGAN, Petitioner,

v.

Mack ANTHONY, Respondent.

No. 99–1018.

Supreme Court of Texas.

Aug. 24, 2000.

Rehearing Overruled Oct. 26, 2000.

John H. Seale, Seale Stover & Bisbey, Jasper, for Petitioner.

Darrell Matthew Minton, Harris Lively & Duesler, Beaumont, for Respondent.

PER CURIAM.

Deborah Morgan sued Mack Anthony for intentional infliction of emotional distress. Anthony moved for summary judgment on the basis that there was no evi-

dence that he acted intentionally, that his conduct was extreme or outrageous, or that Morgan suffered severe emotional distress. The trial court granted Anthony's motion, and the court of appeals affirmed. Because we hold that there is some evidence of the three elements of Morgan's cause of action that are at issue, we reverse the judgment of the court of appeals and remand this case to the trial court.

■ This Court adopted the Restatement's formulation of intentional infliction of emotional distress in *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993) (adopting RESTATEMENT (SECOND) OF TORTS section 46 (1965)). We have held that to recover damages for intentional infliction of emotional distress, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Extreme and outrageous conduct is conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Twyman,* 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS section 46 cmt. d (1965)).

■ In reviewing the summary judgment record to determine if there was legally sufficient evidence to raise a fact question on the three elements of intentional infliction of emotional distress that Anthony raised in his motion, we consider the evidence in the light most favorable to Morgan, the nonmovant. *See Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that a trial court must grant a no-evidence summary judgment motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements); TEX.R.

CIV. P. 166a(i) and cmt. The summary judgment evidence includes excerpts from two depositions of Morgan and her answer to an interrogatory. Generally, a party cannot rely on its own answer to an interrogatory as summary judgment evidence. *See Fisher v. Yates,* 953 S.W.2d 370 (Tex. App.-Texarkana 1997), *pet. denied sub nom. Yates v. Fisher,* 988 S.W.2d 730 (Tex.1998) (per curiam) (noting that a nonmoving party cannot use its own interrogatory answers as summary judgment evidence). However, in this case, Morgan was questioned in one of her depositions about her seven-page interrogatory answer that described in detail the events that are the basis for this suit, and the interrogatory answer was attached to her deposition as an exhibit. She affirmed in her deposition that everything contained in her interrogatory answer was true. The excerpts from her deposition about the interrogatory answer and the interrogatory answer itself were part of the summary judgment record. The interrogatory answer became competent summary judgment evidence when it became a deposition exhibit, Morgan affirmed in her deposition that it was correct, and she was subject to cross-examination about the assertions in her interrogatory answer. We therefore consider the facts recounted in the interrogatory answer, as well as Morgan's deposition testimony.

■ It is necessary in this case to recite the facts in some detail in order to describe adequately the basis for this suit. Morgan recounted that shortly after she left work one afternoon to go home, she began experiencing car trouble. Her workplace was in Colmesneil, Texas, but she lived in Jasper. She stopped to call her husband to tell him of her problem but could not reach him. She was able to get in touch with her mother and asked her mother to contact either her husband or her father and to send one of them to find her if she was not home in thirty minutes. As she continued toward her home on U.S. Highway 190, the problems with her auto-

mobile worsened. She was no longer able to drive more than five miles per hour, so she began traveling on the shoulder.

As she was making her way, Mack Anthony, whom she had never before seen, pulled in front of her in his pickup. At that point, Morgan's vehicle died. Anthony got out of his truck, approached Morgan's car on the passenger side, and opened the door. He asked if she was having trouble, to which she responded yes, but she told Anthony that her husband, who was a mechanic, or her father was on the way to help her. She thanked Anthony and tried to shut her car door, but he held it open. Anthony then made a statement to the effect that Morgan's husband might not be "taking care of [her] in the car department" and implied that her husband might not be "taking care of her" in other areas of her life. Anthony then said that maybe he could "help [her] in another area." She replied no, that she was a happily married woman and asked Anthony to please let her shut the car door. Anthony responded that he did not live very far away and suggested that Morgan follow him so that he could fix her car "and anything extra that [she] needed."

Morgan continued her efforts to pull her car door closed, but Anthony continued to hold it open. She repeatedly asked him to let her shut her door, but he refused. During most of this exchange, Anthony was leaning into the car with one hand on the dashboard, and he stared between Morgan's legs and at her breasts. When he stepped back, with only one hand on the car door, Morgan was able to shut and lock it. Morgan made numerous attempts to restart her car as Anthony stood outside the passenger window saying things such as "come on baby, open the door." Morgan's car eventually did restart and she drove off, but she again could not get her car to go faster than five miles per hour.

Anthony got back into his truck and followed Morgan. He passed her, then pulled onto the shoulder in front of her. She was unable to pass because of oncoming traffic that was traveling at about seventy miles per hour. Her vehicle again died. Anthony again got out of his car and began pulling on Morgan's door handle, knocking on the window, and telling her, "see you do need me." She asked him to please leave her alone and told him that he was scaring her. She was able to restart her vehicle, and she again pulled away.

Anthony again followed her, then passed her. He pulled into an abandoned driveway ahead of her, and as she approached, flashed his headlights and motioned with his hands for her to come into the driveway. Morgan did not stop.

Anthony then pursued her, passed her, pulled in front of her on the shoulder, and stopped. Morgan pulled onto the main highway in an effort to pass him. Anthony then would not allow her to pull back onto the shoulder for a period of time. He then pulled ahead of Morgan, and when she returned to the shoulder, he turned onto a dirt road that she was approaching, blocking her access on the shoulder. She stopped her car about five car lengths from Anthony's truck, unable to pass him, and he came to her door on the passenger side. She asked why he would not leave her alone and told him that she was afraid of him. She then pointed to an oncoming truck and told Anthony that it was her husband, although she knew it was not. Anthony ran back to his vehicle and headed in the opposite direction from the oncoming truck.

Morgan again started her car, but about five minutes later, Anthony returned. He again pulled his truck in front of her on the shoulder and stopped. She was able to pull around him, but seven more times, he pulled in front of her. She began staying on the main highway rather than the shoulder in an effort to avoid being stopped by Anthony. He would pull in front of her to force her onto the shoulder to get around him. Finally, Morgan saw a diner and pulled into its parking lot. She

went inside and told a waitress what had happened. Her father came to the diner and picked her up.

Morgan reported the incident to law enforcement officials in both Tyler and Jasper Counties. Mack Anthony was ultimately identified. While he admitted that he had stopped to offer assistance to Morgan, he denied any inappropriate conduct. Anthony was not charged with a crime. A Tyler County sheriff's deputy told Morgan that it would just " be her word against [Anthony's]." Morgan sued Anthony about one month after the incident, alleging intentional infliction of emotional distress and seeking damages not to exceed $75,000.

Based on the facts that Morgan set forth, we conclude that there is some evidence that Anthony acted intentionally or recklessly. His actions alone indicate that they were done knowingly and intentionally. And, Anthony persisted in his pursuit of Morgan after she had repeatedly asked that he leave her alone and told him that he was frightening her. We also have no difficulty in concluding that there is evidence of conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *City of Midland v. O'Bryant,* 18 S.W.3d 209, 217 (quoting *Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996) (quoting *Twyman,* 855 S.W.2d at 621)).

The court of appeals, however, concluded that there was no evidence that Morgan's emotional distress was severe. *See* 25 S.W.3d at 6. We disagree. The court of appeals focused only on evidence of Morgan's distress in the days and months after the incident. *See id.* at 6. It did not consider the evidence regarding Morgan's emotional state when she was being pursued by Anthony. The deposition excerpts that Anthony attached to his motion for summary judgment reveal that during Morgan's encounters with Anthony, Anthony "instilled great fear and distress" in her. She was afraid that Anthony was going to physically grab her. She testified that while he was making sexual advances and refusing to allow her to shut her car door, she was suffering great fear, distress, and emotional injury. Since that time, she has sought treatment from a psychiatrist, a psychologist, her regular physician, and one of her physician's assistants. She testified that she suffered from depression, has had problems with her family, nightmares, and is afraid when she leaves her home. The record contains more than a scintilla of evidence that Morgan suffered severe emotional distress in the context of the tort of intentional infliction of emotional distress.

Accordingly, pursuant to Rule 59.1 of the Texas Rules of Appellate Procedure and without hearing oral argument, the Court reverses the judgment of the court of appeals and remands this case to the trial court for further proceedings.