Angela ELLIOTT, Appellant,

v.

The METHODIST HOSPITAL, Appellee.

No. 01–98–01269–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 16, 2001.

**6.** *See, e.g., supra* notes 3–5.

Jeffrey Britton Bates, Bates & Hoyt, Lufkin, Robert D. Bates, Bates & Lee, P.C., Houston, for Appellant.

Paul E. Stallings, Oscar Luis Delarosa, Vinson & Elkins, L.L.P., Houston, for Appellee.

Panel consists of Justices COHEN, TAFT, and PRICE.*

## OPINION ON REHEARING

PRICE, Justice (Assigned).

The appellee, The Methodist Hospital ("Methodist"), has filed a motion for rehearing. We deny the motion for rehearing, but withdraw the majority opinion of May 24, 2001 and substitute this majority opinion in its place.[1]

Appellant, Angela Elliott, appeals the trial court's summary judgment in favor of appellee, Methodist. We reverse and remand in part and affirm in part.

### Background

In September 1994, when she was 18 years old, Angela was admitted to Methodist for surgery to treat ulcerative colitis. During surgery, the surgeon changed Angela's diagnosis from ulcerative colitis to possible Crohn's disease. Instead of performing the planned procedure, the surgeon performed an ileostomy, removing most of Angela's colon and leaving a portion of her sigmoid colon and rectum in place pending confirmation of the Crohn's diagnosis. At this point, Angela contemplated the possibility of future surgery—surgery to remove her remaining colon and rectum if she had Crohn's disease or surgery to reverse the ileostomy if she did not have Crohn's disease.

Post-operatively, Methodist's pathologist confirmed the diagnosis of Crohn's disease. Angela desired a second opinion. Angela promptly requested that her medical records and pathology slides be provided to the physician she chose to render a second opinion. Methodist provided Angela's physician with Angela's medical records and 17 of 21 pathology slides. The four missing slides showed the pathological status of Angela's lymph nodes and were the only slides that supported the diagnosis of Crohn's disease. Despite repeated requests from Angela's mother, physicians, and attorney, Methodist failed for over 18 months to provide these needed slides. Angela filed this lawsuit in April 1996 after numerous unsuccessful attempts to obtain the four pathology slides without litigation.[2] After being sued, Methodist in May 1996 provided Angela's treating physicians with the four pathology slides needed to render a second opinion.

During the over–18–month period between September 1994 and May 1996, between the ages of 18 and 20, Angela did not know with certainty what her condition was, how it should be treated, and whether she would have to live with a permanent

---

* The Honorable Frank Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Justice Taft withdraws his dissent of May 24, 2001 and reissues it without substantive change.

2. Angela dismissed her case against her surgeon prior to summary judgment.

colostomy for the remainder of her life. She became extremely depressed and sought medical treatment for her depression. While she also experienced pain and bleeding from her sigmoid colon and rectum, she could not have them removed if there was any possibility that her ileostomy could be reversed. Angela finally had the remainder of her colon and rectum removed in December 1996, over two years after her initial surgery in September 1994.

Angela's First Amended Original Petition alleged that Methodist's intentional failure to provide certain significant pathology slides was an act of conspiracy that "severely hampered [Angela] in obtaining follow-up medical care to treat her true problem." She claimed this failure caused her great mental anguish. Methodist filed a motion for summary judgment on the grounds that (1) Angela's claims were barred as a matter of law because Texas does not recognize a claim for a lost chance of recovery and (2) there was no evidence of the essential elements of the causes of action of intentional infliction of emotional distress and conspiracy.

Angela responded to Methodist's motion, but also filed a Second Amended Original Petition. This petition alleged that the rectal sigmoid portion of Angela's colon remaining in her body was diseased with ulcerative colitis that caused bleeding, pain, and mental anguish. Had she been able to confirm the diagnosis of Crohn's disease, she could have had that portion removed and avoided the long-term suffering. Based on those facts, the Second Amended Original Petition, in addition to allegations contained in previous pleadings,

asserted causes of action for intentional infliction of mental anguish, negligence, gross negligence, breach of a bailment contract, conversion, and conspiracy to perpetrate a fraud.

Methodist filed a brief in reply to Angela's summary judgment response, but did not amend its motion for summary judgment to address the added causes of action. Methodist also filed a Motion to Strike and in the Alternative, Motion for Continuance on the grounds that Methodist needed more time to prepare a defense against the newly asserted theories of recovery. The trial court signed an order granting Methodist's motion for continuance on August 14, 1998, but that same day also signed a take-nothing judgment in favor of Methodist.[3]

### Points of Error

Angela asserts the trial court erred in granting summary judgment because (1) she asserted causes of action not addressed in Methodist's summary judgment motion; (2) Methodist's summary judgment evidence was deficient; (3) there were disputed issues of material fact on her causes of action.

### The Second Amended Original Petition

In point of error one, Angela contends the trial court erred in granting summary judgment on causes of action not addressed in the summary judgment motion. A plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case regarding theories of recovery. Tex. R. Civ. P. 65; *J.M. Huber Corp. v. Santa Fe Energy Resources, Inc.*, 871 S.W.2d 842, 844 (Tex.App.—Houston [14th Dist.]

---

3. The trial court's August 14, 1998 order granting a continuance contained a handwritten notation ordering the parties to contact the trial coordinator and enter a new scheduling order by August 21, 1998. It is unclear why the trial court would have made such an order if it intended to render a complete summary judgment in favor of Methodist the same day.

1994, writ denied). Methodist, therefore, was required to amend or supplement its motion for summary judgment to address these new causes of action. *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Methodist's reply brief filed in response to appellant's answer to the summary judgment motion was not sufficient to rebut the claims added in the amended pleading. *Id.; Guest v. Cochran*, 993 S.W.2d 397, 402–03 (Tex.App.—Houston [14th Dist.] 1999, no writ). There is no question that the motion for summary judgment did not address Angela's claims for negligence, gross negligence, bailment, conversion, or vicarious liability. In fact, the summary judgment motion expressly pointed to Angela's failure to assert a negligence claim as a deficiency in her case.

■ Methodist argues on appeal that Angela's newly asserted allegations are merely artfully pleaded claims for the lost chance of recovery, a cause of action the Supreme Court of Texas expressly rejected in *Kramer v. Lewisville Memorial Hospital*, 858 S.W.2d 397, 407 (Tex.1993). We disagree.

Methodist's argument rests exclusively on purported judicial admissions made by Angela in her deposition to the effect that she was suing to recover for the lost opportunity to have her ileostomy reversed. However, Angela's claims were not limited to that basis of recovery. There was evidence before the trial court that Angela suffered injuries during the 18 months she was forced to delay her treatment. This evidence was in her own deposition, as well as in her mother's deposition and the deposition of her family physician, Dr. Saxton. Because the statements cited by Methodist are inconsistent with Angela's pleadings and with other evidence, Angela's statements were not deliberate, clear, and unequivocal, as they must be if they are to be taken as judicial admissions. *Cates v. Cincinnati Life Ins. Co.*, 947 S.W.2d 608, 612 (Tex.App.—Texarkana 1997, no writ). Moreover, Angela's deposition was taken prior to her filing the Second Amended Original Petition, which more clearly sets out her theories of recovery. Angela was not deposed regarding the nature of her Second Amended Original Petition.

Angela's Second Amended Original Petition and her brief on appeal clarify that she seeks recovery of damages for mental anguish and injuries she suffered during the 18 months she had to wait before receiving the slides. This delay prohibited her from selecting the proper medical treatment plan that would affect the rest of her life. Thus, Angela's cause of action is not limited to mental anguish and damages caused by the inability to have her ileostomy reversed. The trial court erred in granting a complete summary judgment because Methodist's summary judgment motion did not address all of the claims raised in the Second Amended Petition. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983).[4]

We sustain point of error one.

---

4. In its motion for rehearing, Methodist contends the argument it made in its motion for summary judgment applied equally to Angela's claims for suffering and mental anguish arising from the delay in treatment—claims raised in Angela's Second Amended Petition. In support, Methodist cites *Judwin Properties v. Griggs*, 911 S.W.2d 498, 502–03 (Tex. App.—Houston [1st Dist.] 1995, no writ). Unlike *Judwin Properties*, Methodist's motion for summary judgment did not contemplate all of the causes of action set forth in Angela's subsequent pleading. The causal link Methodist challenged in its motion for summary judgment was the link between withholding of the slides and Angela's potential for reversal of the ileostomy. In her Second Amended Petition, however, Angela also alleged a causal link between Methodist's withholding of the slides and the physical pain and anguish she

*The Summary Judgment Proof*

In point of error two, Angela contends the trial court erred in granting summary judgment in favor of Methodist because disputed issues of material fact existed on Methodist's defense and on Angela's claims. In point of error three, Angela contends the affidavit on which Methodist relied was deficient. The affidavit addressed Methodist's affirmative defense of lost chance.

■ To obtain a traditional summary judgment, a defendant either must negate at least one element of the plaintiff's theory of recovery or must plead and conclusively prove each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972). If the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *"Moore" Burger, Inc.*, 492 S.W.2d at 936–37. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ When a summary judgment does not specify or state the grounds on which the trial court relied, we will affirm the summary judgment on appeal if any of the grounds presented in the motion is meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995). In other words, Angela is required to show that each ground alleged in the motion for summary judgment was insufficient to support summary judgment.

*Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

*Methodist's Affirmative Defense*

■ Methodist offered the affidavit of Dr. Philip Bentlif to support its motion for summary judgment on the grounds that Angela's claims were barred by the lost chance doctrine because she truly had Crohn's disease. Angela did not offer a contradictory expert affidavit, but argued at summary judgment and now argues on appeal that Dr. Bentlif's affidavit is conclusory and, thus, not proper summary judgment evidence. Although Dr. Bentlif's affidavit cites his impressive credentials, it fails to establish as a matter of law that Angela's ileostomy was never reversible. Dr. Bentlif reviewed Angela's medical records, but did not make an independent diagnosis of Crohn's disease. He did not examine Angela and, more importantly, he did not examine the four lymph node slides that allegedly contain evidence of Crohn's disease. Dr. Bentlif merely assumes that Methodist's diagnosis of Crohn's disease is correct and, based on that assumption, opines that reversal of the ileostomy was never indicated for Angela. For those reasons, Dr. Bentlif's affidavit lacks foundation and is conclusory.

■ Because Methodist did not come forward with admissible expert testimony to prove its defense as a matter of law, there was no need for Angela to come forward with an expert affidavit to create a fact issue. The pathologist Angela chose to render a second opinion diagnosed Angela with ulcerative colitis after reviewing the first 17 slides, but noted that a

suffered while waiting for a definitive diagnosis: "The delay in responding to the Plaintiff by the Methodist Hospital whether intentional, negligent, or in violation of a bailment or through The Methodist Hospital's conversion, at the very least caused Plaintiff to undergo eighteen (18) months of severe physical symptoms including bleeding, pain and mental anguish."

definitive diagnosis was not possible without the four lymph node slides. After receiving the four lymph node slides in May 1996, Angela's pathologist noted they contained "noncaseating granulomas" and were consistent with Crohn's disease. However, that same pathologist diagnosed Angela with ulcerative colitis in October and again in December 1996. Thus, the medical records contain conflicting diagnoses that create a fact issue regarding Angela's Crohn's disease diagnosis.

### Methodist's no-evidence claims

Methodist asserted as alternative grounds for summary judgment that Angela could produce no evidence on each of the elements of a cause of action for intentional infliction of mental anguish. A no-evidence summary judgment is proper unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on challenged elements of her claim. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.—Houston [1st Dist.] 1999, no pet.), *cited in Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000). As with a traditional motion for summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Morgan*, 27 S.W.3d at 929.

*Intentional Infliction of Emotional Distress.* The elements of intentional infliction of emotional distress are that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

The deposition testimony and medical records submitted to the trial court contain the following evidence. Angela, her mother, and her physicians repeatedly requested the missing pathology slides from Methodist. The requested pathology slides were necessary for Angela's diagnosis and treatment. Methodist, through its employee, Maureen Humphrey, admitted that withholding pathology slides could harm a patient. The requested pathology slides were not provided to Angela's physicians for 18 months. Angela suffered rectal bleeding and pain during those 18 months. Angela did not have the remaining portion of her colon removed during those 18 months because she was still considering re-anastomosis. Angela was distressed and was prescribed anti-depressant medication during this period. Angela's depression was due to not having closure, to her not finding out whether the initial opinion was correct or not.

Intent may be inferred from the circumstances of the case and includes conduct undertaken with knowledge of, and indifference to, the risk of harm to another. *Behringer v. Behringer*, 884 S.W.2d 839, 842 (Tex.App.—Fort Worth 1994, writ denied). The evidence that Angela repeatedly requested the slides, they were not provided, and Methodist gave no excuse for its failure to provide them, either to Angela or to the trial court, is sufficient to allow a jury to infer intentional or reckless conduct.

Liability for extreme and outrageous conduct arises when the conduct is so outrageous in character or extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Behringer*, 884 S.W.2d at 844. Whether conduct is extreme and outrageous is generally a question of law. *Id.* Only if reasonable minds may differ does the fact finder determine whether the con-

duct was sufficiently extreme and outrageous to result in liability. *Id.*

We believe reasonable minds could differ in this case. Methodist's failure to provide pathology slides necessary for a second opinion, apparently without any explanation or excuse, for an extended period of time during which it had reason to know that Angela was suffering and delaying further treatment, constitutes sufficiently extreme and outrageous conduct to allow a jury to assess liability. *See Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948, 951 n. 3, 953 (1986) (citing RE-STATEMENT (SECOND) OF TORTS § 46 cmt. d (1965), noting liability found only when conduct is regarded as atrocious and utterly intolerable in civilized community, and holding physicians recklessly caused patient severe emotional distress when they were aware of patient's emotional problems and repeatedly refused to provide patient with medical records over a period of years).

"Severe emotional distress" means distress so severe one could expect no reasonable person to endure it. *Rescar, Inc. v. Ward,* No. 01–99–00038–CV, slip op. at 19–20, —— S.W.2d ——, —— – ——, 2001 WL 754779 (Tex.App.—Houston [1st Dist.] July 5, 2001, no pet. h.). The requisite level of severity is a difficult threshold issue. *Id.* at 20, —— S.W.2d at ——, 2001 WL 754779. What is unquestionably reasonable to one person may be clearly unreasonable to another. *Id.*

Angela testified she was depressed, lost her appetite, lost weight, did not sleep, and had suicidal thoughts. She testified her physician diagnosed her with depression and prescribed an antidepressant. Angela's mother testified one of Angela's friends reported he was scared because Angela had been talking about being suicidal. Angela testified she was depressed because of the delay in getting the slides and the lack of closure while waiting for a second opinion. We conclude Angela produced more than a scintilla of evidence that Methodist's act of withholding the slides caused her to suffer severe emotional distress. *Cf. Motsenbocker v. Potts,* 863 S.W.2d 126, 135 (Tex.App.—Dallas 1993, no writ) (holding that evidence supported jury's finding of liability on claim for intentional infliction of emotional distress when evidence showed that, after learning about increase in insurance deductible, cancer patient worried about financial impact on family, suffered insomnia, was scared, and told wife he had begun to wonder whether he had the right to continue to fight his cancer).

*Conspiracy.* Methodist also moved for and was granted summary judgment on Angela's cause of action for conspiracy. Because the First Amended Original Petition and the Second Amended Original Petition asserted the same cause of action for conspiracy, we will consider whether the summary judgment was proper as to that cause of action. The elements of a claim for conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

Angela attempts to raise a fact issue by arguing that the statement in Methodist's answer that the incident in question was possibly caused by the acts of third persons constitutes evidence that two or more persons were engaged in the conspiracy. Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions that may be used as evidence. *Hughes Wood Prod., Inc. v. Wagner,* 18 S.W.3d 202, 207 (Tex.2000). We do not

believe the statement in Methodist's answer, which was one of several defenses raised therein, suffices to raise a fact issue whether two or more persons were engaged in the alleged conspiracy.

Angela also cites the deposition of Judy Welch, Methodist's Administrative Director of Laboratory Medicine and Pathology, in support of her conspiracy claim. Welch allegedly testified that she relied upon a pathologist who was not a Methodist employee in determining which slides were necessary for Angela's second opinion. However, the deposition was not attached to Angela's summary judgment response and was not before the trial court. Angela also points to statements made in her mother's deposition in support of this claim. Yet, that testimony establishes that Angela's mother, Pat Elliot, did not know whether the pathologist used by Methodist was a Methodist employee.

Angela presented no other evidence in support of her conspiracy cause of action. Because Angela did not come forward with some evidence on each element of conspiracy, the trial court did not err in granting summary judgment on that cause of action.

We sustain point of error two to the extent that it relates to claims other than the conspiracy claim. We overrule point of error two to the extent it relates to the conspiracy claim. We sustain point of error three.

### Conclusion

The August 14, 1998 summary judgment is affirmed only as to Angela's cause of action for conspiracy. The judgment is reversed as to all other causes of action asserted in the Second Amended Original Petition, and the cause is remanded.

Justice TAFT dissenting, and dissenting in the denial of the motion for rehearing.

TAFT, Justice, dissenting.

I withdraw my dissenting opinion of May 24, 2001 and substitute this dissenting opinion in its place.

The conduct of appellee, the Methodist Hospital, was not so extreme and outrageous as to permit recovery. To support a claim for intentional infliction of emotional distress, the conduct must be so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). A Texas plaintiff has an exceptionally difficult burden to recover for this cause of action. *C.M. v. Tomball Reg'l Hosp.*, 961 S.W.2d 236, 244 (Tex.App.—Houston [1st Dist.] 1997, no writ).

Recognizing this extraordinary burden in *C.M.*, we held that the conduct of an emergency room nurse, who refused to examine a minor rape victim to determine the degree of her injury, refused to prepare a "rape kit" on the minor, treated the minor and her mother with "disdain, disgust and indignity," and caused information about the rape of the minor to be broadcast among other patrons of the emergency room by interviewing the minor in the public waiting room, was not extreme and outrageous. *See id.* Similarly, while Methodist's withholding the four slides from Angela for 18 months may be "morally unjustifiable, unscrupulous and ignominious behavior," it is not extreme and outrageous. *See Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 486 (Tex.App.—Houston [14th Dist.] 1996, no writ) (holding conduct of doctors who told plaintiff they would send her home and cease medical treatment unless she took a semi-private room did not rise to the level of "extreme and outrageous").

I also disagree with the majority's finding Dr. Bentlif's affidavit conclusory. When no facts are stated to support conclusions in affidavits, the affidavits are not proper summary judgment proof. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). A conclusory statement is one that provides no underlying facts to support its conclusion. *Id.*

Dr. Bentlif's conclusion here is based on his examining all of Angela's medical records, including Dr. Whitman's notation of the possibility of Crohn's disease prior to the operation and Dr. Bailey's conclusion, which concurred with Dr. Laucirica's pathology report, that Angela had Crohn's disease. Thus, Dr. Bentlif did not merely examine Angela's medical records, although this alone would not have made his affidavit conclusory according to this Court.[1] Instead, Dr. Bentlif adopted the conclusion of Dr. Bailey, which was based on a pathology report, and thereby set forth a factual basis for his conclusion. Accordingly, I would find that Dr. Bentlif's affidavit was not conclusory, but was competent summary judgment evidence.

For these reasons, I respectfully dissent.

---

1. *See Davis v. Medical Evaluation Specialists, Inc.,* 31 S.W.3d 788, 794–95 (Tex.App.—Houston [1st Dist.] 2000, pet. denied).