**Opinion issued August 20, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00846-CV

————————————

## ANNA AMBOREE, Appellant

## V.

## MICHELLE BONTON, ELLIS BONTON, ELLIS INDUSTRIES, INC., THE EDUCATION VALET, INC., SONIA JORDAN, DANIELLE HARRISON AND DECOUNDER THOMPSON, Appellees

---

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2012-55684

---

## MEMORANDUM OPINION

Appellant, Anna Amboree, challenges the trial court's rendition of summary

judgment in favor of appellees, Michelle Bonton, Ellis Bonton, Ellis Industries,

Inc. ("Ellis Industries"), the Education Valet, Inc. ("Education Valet"), Sonia

Jordan, Danielle Harrison, and Decounder Thompson (collectively, "appellees"), in her suit against them for tortious interference, fraud, conspiracy, wrongful termination of her employment under *Sabine Pilot*,[1] violation of the Texas Open Meetings Act,[2] and a declaratory judgment. In two issues, Amboree contends that the trial court erred in granting appellees summary judgment.

We affirm in part and reverse and remand in part.

## Background

In her fourth amended petition, Amboree alleges that she was employed as The Rhodes School's Chief Financial Officer ("CFO"), Business Manager, and Human Resources Manager ("HR Manager"). Michelle Bonton, "a founding member, the principal[,] and [the] superintendent" of The Rhodes School, was Amboree's supervisor and the individual to whom she "directly" reported. Amboree "advised . . . Bonton . . . on financial and business matters as they related to the school." For instance, she "advised" Bonton "that the school was required to obtain permits from Harris County when performing construction on the school"; Bonton could not use the school's property "for personal use"; fulfilling Bonton's request to "verify employment" of her daughter would be "fraud[ulent]" because her daughter "was out of state on an internship at the time"; "it [would be] illegal

---

[1]     *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

[2]     TEX. GOV'T CODE ANN. §§ 551.001–.146 (Vernon 2012 & Supp. 2014).

[for Bonton] to change [a] student's grades without teacher involvement"; and Bonton was improperly using grant funds. Bonton continuously "ignored" Amboree's advice. Also, Bonton wrongfully "took out and paid profit in the form of 'commissions' [to] herself as a grant writer on grants," employed relatives at The Rhodes School, and allowed relatives to serve on the school's board—actions which Bonton swore on the charter school's application that she would not do.

Moreover, according to Amboree, the "principal[s]" and "sole shareholders" of the company that "provide[s] bus transportation [for] The Rhodes School" are Bonton and her husband, Ellis Bonton. Sonia Jordan, Bonton's "good friend and [a school] board member," on behalf of The Rhodes School, signed a transportation contract with the Bontons' company, Ellis Industries, and "a check for $15,000" without approval from the school board. And although Amboree recommended that the school "purchase a bus to transport students," Bonton decided to use a "van" instead, "in violation of the transportation code." The Rhodes School, rather than Ellis Industries, also paid certain school employees to "attend driver training" and transport students to school on behalf of Ellis Industries. According to Amboree, Bonton "managed Ellis Industries f[ro]m her office at The Rhodes School . . . and parked the bus [on school property] without compensating the school" or board approval. And Bonton used school staff, equipment, supplies, and funds to run Ellis Industries. The Bontons also "created

3

and ran the Crayon Club[3] day care on the premises of The Rhodes School . . . without paying rent" to the school. Although Amboree "advised" Bonton that she "could not use the school's facilities and employees for a for-profit business at no cost," Bonton "refused to pay a portion of the utilities and space" for the Crayon Club.

Amboree further alleges that Bonton, "[a]gainst the better interest of the school," "executed . . . and illegally backdated" a lease agreement between The Rhodes School and Jordan's husband. The lease was intended to pay the Jordans for "board meetings (past and present) that were being held at [their] house," despite the fact that The Rhodes School was available for such meetings and was "closer and free."

In July 2010, Bonton "violated the [Texas] Open Meetings Act by posting the [board] meeting without sufficient notice." At the July meeting, she "added her daughter . . . and her very good friend[,] Mignonne Anderson[,] to the budget as new full time employees." And Bonton "increased [the school's] transportation budget to allow her to support her daughter's and other friend's salar[ies] by intentionally and willfully and fraudulently inflating the [school's] enrollment numbers." When Amboree advised Bonton that using "fabricated enrollment

---

3       According to Amboree, Education Valet is doing business as the "Crayon Club."

numbers was illegal" and Amboree "refused to take part in using" the inflated numbers, Bonton became "very defensive."

In regard to the termination of her employment, Amboree alleges that "[a]t the September 2010 board meeting, the board approved terminations that were not an agenda item" and "were not properly noticed." Further, Bonton provided false information to the board about Amboree and the discontinuation of certain funding for the school. Bonton used the purported lack of funds as a "pre-textual" reason for recommending the termination of Amboree's employment. According to Amboree,

> After a history of [her] informing . . . Bonton of the illegality, unethical nature and inappropriate business decisions of her actions as they related to The Rhodes School . . . and refusing to participate in such illegal acts . . . [Bonton] determined that [Amboree] was an obstacle in [her] continuing to use The Rhodes School as a conduit or tool for her own for profit businesses by siphoning off government funds and taxes . . . .

Amboree seeks damages for tortious interference with her employment contract, fraud, conspiracy, wrongful termination of her employment under *Sabine Pilot*, and violation of the Texas Open Meetings Act. She also seeks a judgment declaring that appellees "violated the [Texas] Open Meetings Act" and the "termination" of her employment is "void." Amboree further requests reinstatement of her employment.

5

Appellees filed a no-evidence summary-judgment motion, asserting, in regard to Amboree's tortious-interference claim, that she "was not employed" by appellees and "cannot produce competent evidence that . . . [they] willfully and intentionally interfered with her employment contract[,] . . . the interference, if any, proximately caused her injury[,] [or] . . . she incurred actual damage or loss." In regard to Amboree's fraud claim, appellees asserted that she "cannot produce competent evidence that . . . [they] made a representation to her which was material and false," "if a false representation was made, . . . [they] knew it was false or . . . made [it] recklessly, as a positive assertion, without knowledge of its truth," a representation was made with the requisite intent, or she "relied on" any such representation, "acted on it," or "suffered damage or a loss as a result." Appellees further asserted that Amboree's "'cause of action' for civil conspiracy [was] not a cause of action, but, rather, a type of participatory liability to establish joint and several liability for those who agree to participate in an agreement to commit a tort" and "the underlying tort for a conspiracy must be an intentional tort." And they argued that "[b]ecause [Amboree] cannot produce competent evidence that . . . [appellees] committed an intentional tort against her," she cannot "establish . . . the . . . elements of conspiracy." Finally, in regard to Amboree's *Sabine Pilot* claim, appellees asserted that she "cannot proffer competent evidence

in support of the third element of her claim," i.e., that her employment was terminated solely because of her refusal to perform an illegal act.

In her response, Amboree did not direct the trial court to any evidence related to the challenged elements of her claims. Instead, her response and her affidavit attached to the response merely regurgitate the facts Amboree alleges in her fourth amended petition.

After Amboree filed her response to appellees' summary-judgment motion, the trial court granted the motion, finding that "an adequate time for discovery has passed," and it concluded "with regard to each of . . . Amboree's claims against [appellees]," that there is "no evidence of one or more elements on which [Amboree] has the burden of proof." Further, the trial court stated that its summary judgment was "final" against Amboree "on all of her claims against [appellees]."

**Standard of Review**

We review a no-evidence summary judgment de novo under the same legal-sufficiency standard used to review a directed verdict. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). To prevail on a no-evidence summary-judgment motion, a movant must establish that there is no evidence of an essential element of the non-movant's cause of action or affirmative defense. TEX. R. CIV.

7

P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn v. Love*, 321 S.W.3d 517, 524 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Although the non-movant is not required to marshal her proof, she must present evidence that raises a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Mott v. Red's Safe & Lock Servs., Inc.*, 249 S.W.3d 90, 95 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A no-evidence summary-judgment motion may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted). When reviewing a no-evidence summary-judgment motion, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## Summary Judgment

In her first issue, Amboree argues that the trial court erred in granting appellees summary judgment because "the additional claims asserted . . . in [her] [f]ourth [a]mended [p]etition" "were not considered" by the court. In her second issue, Amboree argues that the trial court erred in granting appellees summary judgment on her remaining claims because she raised "a genuine issue of material fact" on the elements of those claims. In response, appellees assert that "the additional claims in Amboree's [f]ourth [a]mended [p]etition are against The Rhodes School, a party which was not before the trial court" and "[t]here is no genuine issue of material fact regarding any of Amboree's causes of action."

### *Fourth Amended Petition*

In regard to her first issue, Amboree's live pleading at the time appellees filed their no-evidence motion for summary judgment was her third amended petition. Subsequent to the filing of appellees' motion, but prior to the trial court's summary-judgment ruling, Amboree filed her fourth amended petition. Amboree asserts that her fourth amended petition "contained new causes of action," making the trial court's final-summary judgment order, which dismissed "all of her claims against [appellees]," improper.

As a general rule, "[a] plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case." *Elliott v.*

*Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also* TEX. R. CIV. P. 63, 65.  A plaintiff timely files an amended pleading if she does so seven days before trial.[4]  TEX. R. CIV. P. 63; *see also Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (explaining, under rule 63, leave not required for plaintiff to amend if amended petition filed "seven days or more before the date of trial" (internal quotations omitted)); *Masonic Bldg. Ass'n of Hous., Inc. v. McWhorter*, 177 S.W.3d 465, 470 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[P]arties must amend their pleadings seven days before trial . . . .").  For purposes of rule 63, "[a] summary judgment proceeding is a trial." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *Wheeler v. Yettie Kersting Mem'l Hosp.*, 761 S.W.2d 785, 787 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Amboree filed her fourth amended petition on September 8, 2014, and the record shows that the trial court signed its order granting summary judgment eight days later, on September 16, 2014.[5]  In their briefs, however, the parties indicate that appellees' summary-judgment motion was submitted for a ruling on September 15, 2014—seven days after Amboree filed her amended petition.

---

[4]  If a plaintiff files an amended petition "within seven days" of trial, she must request leave from the trial court.  *See* TEX. R. CIV. P. 63.

[5]  The trial court's order states:  "On this day came to be heard Defendants Michelle Bonton's, Ellis Bonton's, Ellis Industries, Inc.'s, The Education Valet, Inc.'s, Sonia Jordan's, Danielle Harrison's, and Decounder Thompson's Motion for No Evidence Summary Judgment . . . ."

Notably though, it does not matter whether the trial court heard appellees' motion on September 15 or 16 because, either way, Amboree timely filed her fourth amended petition. *See Sosa*, 909 S.W.2d at 895 (holding second amended petition timely filed "exactly one week before a scheduled summary judgment hearing"); *see also Masonic Bldg.*, 177 S.W.3d at 470 (noting trial began six days after plaintiffs filed their amended pleading, "one day too soon"); *Rabbani v. Timberlake*, No. 01-95-01126-CV, 1996 WL 434212, at *2 (Tex. App.—Houston [1st Dist.] Aug. 1, 1996, no writ) (not designated for publication) (holding plaintiffs' amended petition timely filed when "hearing on the summary judgment was set on May 31, 1995, and the amended petition was filed on May 24, 1995"). Accordingly, we conclude that Amboree's fourth amended petition was her live pleading at the time the trial court rendered summary judgment on her claims. *See Sosa*, 909 S.W.2d at 895; *Elliott*, 54 S.W.3d at 793.

Having concluded that Amboree's fourth amended petition is her live pleading, we must now consider whether it contains additional new claims which were not properly disposed of through summary judgment. *See Sosa*, 909 S.W.2d at 895 (when amended petition timely filed, trial court must base its decision on amended pleading, not any superseded petition). Generally, once a plaintiff has timely amended her petition to add new claims, the defendants are not entitled to a summary judgment on the plaintiff's entire case, unless the defendants amend or

supplement their motion for summary judgment to address the newly added claims.[6] *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Johnson v. Rollen*, 818 S.W.2d 180, 183 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("A summary judgment may not be granted . . . on a cause of action not addressed in the summary judgment proceeding."). This is because "[t]he fact that [a plaintiff] amend[s] [her] petition and add[s] new causes of action after [the defendants] filed [their] motion for summary judgment[,] does not change [the defendants'] burden to establish [their] entitlement to summary judgment . . . on each alleged cause of action." *Johnson*, 818 S.W.2d at 183.

As noted above, Amboree, in her fourth amended petition, as she did in her third amended petition, brings claims for tortious interference, fraud, conspiracy, and wrongful termination of her employment under *Sabine Pilot*. Appellees addressed each of these causes of action in their no-evidence summary-judgment motion. However, Amboree, in her fourth amended petition, adds a claim against

---

[6]     We note that "[a]n amended or supplemental motion for summary judgment is not always necessary, [for instance], when the amended petition essentially reiterates previously pleaded causes of action," "when a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims," or "when the original motion is broad enough to encompass the newly asserted claims." *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Appellees do not argue, and the record does not show, that such circumstances are present in this case.

12

appellees for violating the Texas Open Meetings Act and seeks a judgment declaring that appellees violated the Act and the termination of her employment is "void." Appellees, in their summary-judgment motion, did not address these new claims. *Cf.* TEX. R. CIV. P. 166a(i) ("The motion must state the elements as to which there is no evidence."); *Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 685 (Tex. App.—Dallas 2005, no pet.) ("In a no-evidence motion for summary judgment, the movant must specifically state which elements of the nonmovant's claims lack supporting evidence.").

Appellees argue that the trial court did not err in granting them summary judgment on Amboree's entire case because "the additional claims" in her fourth amended petition are "against The Rhodes School, a party which was not before the trial court." They assert that although Amboree in her fourth amended petition "purports to add a claim for violation of the '[Texas] Open Meetings Act,'" she "fails to identify *who* or *what entity* the claim is aimed against."

However, contrary to appellees' assertions, Amboree, in her fourth amended petition, alleges that appellees, not The Rhodes School:

> terminated [her] employment in a special meeting that was called in violation of [t]he [Texas] Open Meetings Act as well as took actions in other meetings also in violation of [t]he . . . Act. . . . [Bonton] tortuously interfered with [Amboree] by call[ing] a meeting in violation of the Open Meetings Act as well as the actions taken against [Amboree] in that illegal meeting. [Bonton's] subsequent actions in this meeting were void, invalid and unenforceable. Because Bonton, Jordan, Decounder and Thompson violated the [Texas] Open

13

Meetings Act they are liable in their individual capacity. Because Bonton additionally violated the . . . Act to further her personal interests and illegal actions she is liable in her individual capacity for the [Texas] Open Meetings Act violations as well as the remedies, including but not limited to back pay, actual damages and attorneys' fees.

(Internal footnote omitted.) And Amboree, in fact, seeks a judgment declaring that appellees violated the Texas Open Meetings Act and the termination of her employment is "void."

Although Amboree, in her fourth amended petition, does purport to add The Rhodes School as a defendant in regard to her claim concerning the Texas Open Meetings Act, the petition itself reveals that she does not allege that the school *alone* violated the Act; rather, she asserts her new claim and seeks a declaratory judgment against appellees as well.[7]

Here, the trial court, in its summary-judgment order, stated that "with regard to each of . . . Amboree's claims against [appellees], there is no evidence of one or more elements on which [Amboree] has the burden of proof at trial." And the trial court granted "final summary judgment" against Amboree "on all of her claims against [appellees]." However, a trial court may not grant summary judgment on claims not addressed in a summary-judgment motion. *Black v. Victoria Lloyds Ins.*

---

[7]    Because The Rhodes School is not a party to this appeal, we express no opinion as to whether it is a defendant in this case.

14

*Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983).

Accordingly, we hold that the trial court erred in granting summary judgment on Amboree's claim against appellees for violating the Texas Open Meetings Act and her request for a judgment declaring that they violated the Act and the termination of her employment is "void."

We sustain Amboree's first issue.

### Remaining Claims

In regard to Amboree's second issue, concerning her claims against appellees for tortious interference, fraud, and conspiracy, we note that she, on appeal, as she did in the trial court, merely asserts that "a genuine issue of material fact exist[s] in [her remaining] causes of action." Amboree does not, however, actually specify in her brief what "fact issues" actually exist.[8]

---

[8] We do not address whether the trial court erred in granting summary judgment on Amboree's claim concerning the wrongful termination of her employment under *Sabine Pilot*. In her reply brief, Amboree states: "[I]t is important to note that [Amboree] did not appeal [the *Sabine Pilot*] claim or address it in her initial [b]rief. . . . Amboree stipulates that she [is] not moving forward [with] that claim in this appeal." Accordingly, we affirm the portion of the trial court's judgment rendered in favor of appellees on Amboree's claim for wrongful termination of her employment under *Sabine Pilot*. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (indicating appellate court should affirm trial court's summary judgment on unchallenged claims); *Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 462 n.2, 471 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (affirming summary judgment because appellant stated "in its brief that it d[id] not dispute the granting of summary judgment against it on its tort claims").

As noted above, appellees, in their no-evidence summary-judgment motion, asserted that Amboree could not "produce competent evidence" regarding certain specific elements of her claims for tortious interference, fraud, and conspiracy. *See* TEX. R. CIV. P. 166a(i) ("After adequate time for discovery, a party . . . may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim . . . on which an adverse party would have the burden of proof at trial."). Once appellees challenged the elements of Amboree's causes of action, it then became Amboree's burden to "produce[] summary judgment evidence raising a genuine issue of material fact" on each element attacked. *Id.*; *see also Mack Trucks*, 206 S.W.3d at 582.

Here, Amboree, in her response to appellees' no-evidence summary-judgment motion, did not direct the trial court to any evidence on the challenged elements of her claims for tortious interference, fraud, and conspiracy. *Cf. Mack Trucks*, 206 S.W.3d at 582 (explaining "burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion"); *Hahn*, 321 S.W.3d at 524 ("The trial court must grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact."); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 868 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 73 S.W.3d 193 (Tex. 2002) (noting "general" assertions of existence of "genuine issues of material fact" inadequate).

16

Nor does she direct us to any evidence in the record that actually supports the existence of any purported "fact issues." *Cf. Manautou v. Ebby Halliday Real Estate, Inc.*, No. 05-13-01035-CV, 2015 WL 870215, at *3 (Tex. App.—Dallas Feb. 27, 2015, pet. denied) (mem. op.) ("When a trial court grants a no-evidence motion for summary judgment, in order to adequately challenge on appeal each possible ground for summary judgment, an appellant must cite the specific evidence in the record that it relied upon to defeat the motion and describe why that evidence raised a fact issue."); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) ("An appellant has a duty to show that the record supports her contentions."); *Brewer*, 7 S.W.3d at 868 (noting "general" assertions of existence of "genuine issues of material fact" inadequate).

Instead, Amboree, in her brief, merely makes bare assertions that she has "offered substantial evidence" that appellees "willfully and intentionally interfered with her employment at [T]he Rhodes School"; "fir[ed] her without legitimate reason and for [their own] person[al] and financial interests"; and the "interference" and her "termination[] caused [her] injuries." In regard to her fraud and conspiracy claims, Amboree blankly asserts that "a combination of persons acted with [the] intent to accomplish 1) for an unlawful purpose or 2) a lawful purpose by unlawful means, 3) that those combinations had a meeting of the minds

on the intent or object to further the course of action" and argues that she "suffered as a result."

Notably, "[i]t is not our duty [on appeal] to *sua sponte* conceive of potential fact issues and then search the appellate record for evidence supporting their existence." *Daniel v. Webb*, 110 S.W.3d 708, 710 (Tex. App.—Amarillo 2003, no pet.); *see also Bich Ngoc Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776–77 (Tex. App.—Dallas 2013, pet. denied) ("In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous deposition transcriptions in search of evidence to support the non-movant's argument that a fact issue exists." (internal quotations omitted)); *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("[I]n determining whether a respondent to a no-evidence motion for summary judgment has sufficient evidence to raise a genuine issue of material fact, courts are not required to search the record without guidance." (internal quotations omitted)).

We conclude that Amboree did not carry her burden to produce evidence raising a genuine issue of material fact on the challenged elements of her claims against appellees for tortious interference, fraud, and conspiracy. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of appellees on Amboree's claims for tortious interference, fraud, and conspiracy.

18

We overrule Amboree's second issue.

## Conclusion

We affirm the portion of the trial court's judgment rendered in favor of appellees on Amboree's claims for tortious interference, fraud, conspiracy, and wrongful termination of her employment under *Sabine Pilot*. We reverse the portion of the trial court's judgment that was purportedly rendered in favor of appellees on Amboree's claim for violation of the Texas Open Meetings Act and her request for a judgment declaring that appellees violated the Act and the termination of her employment is "void." And we remand this case to the trial court for further proceedings consistent with this opinion. *See Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 336–37 (Tex. 1997) (where trial court errs in granting summary judgment on unaddressed claims, appellate court should remand those claims for further proceedings); *Postive Feed, Inc. v. Guthmann*, 4 S.W.3d 879, 881 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("When, as here, a trial court grants more relief by summary judgment than requested, by disposing of issues never presented to it, the interests of judicial economy demand that we reverse and remand as to those issues . . . .").

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.